## Housenick *versus* Miller.

1. An attorney-at-law in Pennsylvania has very extensive power in relation to conducting a suit, but he has no power after judgment to compromise his client's case without the client's authority or sanction.

2. H., who was a judgment-creditor of Y., issued an execution which was stayed by the court upon the application of other creditors. An agreement was then entered into between Y. and W., whereby the latter received the goods from Y., and undertook to pay the creditors. It was in evidence that the counsel of H. was present at the meetings where this plan was arranged, and assented thereto. H. afterwards employed other counsel, issued an alias execution, and levied on the goods. W. claimed them, and a feigned issue was framed. *Held*, that the assent of the counsel of H. was insufficient to bind W., and it was error to withhold from the jury evidence that she had never assented to the arrangement.

March 11th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, of *Luzerne county :* Of January Term 1880, No. 244.

Feigned issue under the Sheriff's Interpleader Act, wherein G. M. Miller was plaintiff and Mary Housenick defendant. At the trial it appeared that Yost and Borden were partners in the clothing business in Wilkesbarre, and that in April 1877 they dissolved partnership, Borden going out of the business and Yost continuing the same. Mary Housenick held certain notes of Yost, and having brought suit thereon, obtained a judgment, and through her counsel, J. G. Miller, issued a fieri facias, which was returnable to the return-day in January 1878. Certain other creditors of Yost obtained a rule to show cause why the judgment should not be opened, and, pending the rule, the execution was stayed.

At the instance of Borden, his father-in-law, G. M. Miller, the plaintiff, had various conferences with Yost and these other creditors on the subject of settling their claims. They amounted to some $5500, and for this sum in the aggregate G. M. Miller endorsed to the other creditors certain notes of Yost, and of Yost & Borden, at three, six, nine and twelve months. At the same time, December 14th 1877, G. M. Miller and William C. Yost entered into an agreement in writing, as follows :

" Whereas, William C. Yost has this day sold and delivered to G. M. Miller his stock of goods, clothing, material, &c., in his store on east side of Public Square, Wilkesbarre, and has also assigned certain accounts due Wm. C. Yost, and the late firm of Yost & Borden; and whereas, G. M. Miller has this day endorsed the notes of said Yost, and of Yost & Borden, for about $5500, payable in three, six, nine and twelve months. Now it is agreed that an inventory of said goods shall be forthwith taken; that said Miller shall employ said Yost, at reasonable compensation, to can-

[Housenick v. Miller.]

tinue at said place of business, and sell and dispose of said stock; any new stock to be paid for in cash only, upon written direction of said Miller. The proceeds of all such sales shall be applied to the payment of the notes aforesaid, either directly or through said Miller. Upon the payment of said notes at maturity, or sooner, together with all costs, expenses, rents, &c., for which Miller may become liable, said stock of goods, uncollected accounts, &c., shall be assigned and sold and delivered to Mrs. Mary Housenick or her assigns. All moneys collected by said Miller out of the books and accounts assigned to be applied to the payment of said notes, and any goods sold by Miller to be likewise so applied. In case said Yost fails or refuses to conduct said business in a proper manner, and not satisfactory to said Miller, his employment by said Miller may be terminated. In case of a failure to pay said notes out of the proceeds of said business, and in case said Miller is compelled to wind up said concern, all property, goods, accounts and moneys remaining in hands of said Miller, after payment of notes, costs, expenses, rents, &c., said Miller agrees to deliver and pay over to the said Mary Housenick for her use and benefit.

"Witness our hands this 14th of December, a. d. 1877.

"Wm. C. Yost.
"G. M. Miller."

The rule to open the judgment was afterwards discharged, when Mrs. Housenick employed other counsel, and levied upon and sold some of the goods in the clothing store. Miller claimed the goods, when this feigned issue was framed.

At the trial, before Harding, P. J., the plaintiff, G. M. Miller, testified: "Borden was my son-in-law. * * * Borden really sold out to Yost; Yost kept the stock and was to pay the debts. The creditors began to push, and the Philadelphia creditors came up and went to Borden, and he came to me. After two or three days dickering, the contract (above set forth) was drawn up by my attorney, Governor Hoyt. * * * I refused to sign it until the execution of Mrs. Housenick was withdrawn. Was in J. G. Miller's office when I signed it; it was in his office, the counsel of Mrs. Housenick. * * * I told the employees in the store they were working for me; that I would keep them on at the same rate of wages they were receiving. * * * The business was conducted in the name of Yost as agent; goods were purchased in my name or in Yost's as agent. * * * The sign was not altered. * * * This arrangement lasted until about, I should think, in the latter part of September 1878; it is about the time of the date of that last execution; I don't just recollect the date. On the 17th of September, one of these series of notes became due, and I had no money from the concern to pay it, and I told Mr. Yost that I thought we had better take an inventory and see where we stood;

[Housenick *v*. Miller.]

I wanted to know how we were getting along; and we were taking this inventory, and this execution came out about that time—this second execution of Mrs. Housenick's; I gave bond here, and got that stopped for the time being; and the landlord came on with a landlord's warrant about that time, and cleaned us all out. Then I purchased the goods of the landlord after he bought them; he bought them; I purchased them again."

The defendant, Mrs. Housenick, testified: " They spoke to me about the sale of goods to Miller, but I said I would agree to anything, provided it did not interfere with my claim, so that that was not interfered with; I would agree to anything, so that it would not impair my claim; so that that was safe. * * * I was willing to wait on Yost, providing my claim would be safe—if it would not impair my claim; * * * that is all I know about it; they never consulted me about anything."

J. G. Miller, who had been counsel for Mrs. Housenick in the first execution, testified: " I was opposed to this compromise; I thought Mr. Yost could not carry it out; that he was paying more, as the times were, than he could accomplish—agreeing to pay more to the creditors than he was able to pay—the compromise referred to in that paper; I think he agreed to pay about sixty-eight per cent., and I thought he was not able to pay any such amount; and I proposed, in order to protect Mrs. Housenick's interests—our execution had been stayed—to have Mr. Lewis, who was the landlord and friend of mine, issue a landlord's warrant and sell the property out, and have it bought in by Lewis for Mrs. Housenick's benefit. But Yost thought he would be able to carry the agreement through; and I refused to consent to it, without somebody would be there to see that Mrs. Housenick would be satisfied with it. * * * I met Mrs. Housenick some time after that down in Yost's store one day, and we talked over the matter how it had been arranged; this was in this same store; I told her I was afraid may be Mr. Yost could not make it go, and he thought he could; and she said she hoped he could, and if he could, it was the best thing that could have been done; that everybody would be fixed then. I told her I was in hopes he would be able to carry it through; that was shortly after this thing occurred—shortly after the contract was made. * * * I don't know that we went into it fully, but it was spoken of being a compromise made, and that Mr. Yost was going to try to pay off all his creditors. It was talked over, and Mrs. Housenick seemed to understand it."

In the general charge, the court, inter alia, said :—

[" It seemed to be, if the witnesses are to be believed, the desire of Mr. Yost—in which he was joined by Mrs. Housenick—to have some sort of compromise made between his creditors and himself, whereby he would be able to extricate himself from difficulty.]

* *. * G. M. Miller, the plaintiff here, was not to realize one

[Housenick v. Miller.]

dollar. The goods were transferred to him until the endorsements should be paid, and then they were to go to the unfortunate creditor, Mrs. Mary Housenick.

" Mr. Yost was left there in possession. [Now, I may say to you, that an innocent creditor in New York, or Philadelphia, or elsewhere, selling goods to Mr. Yost, notwithstanding this transfer has been made, might have pursued him, levied upon his goods, and collected his debt out of him, because, as between the debtor and the innocent creditor, the transfer would have been a fraud in law. But if G. M Miller tells the truth, Mrs. Housenick never availed herself of it as a fraud in law. Her agent and counsel entered into it. Before Mr. Miller himself would enter into it, if his testimony is to be believed, that execution of Mrs. Housenick had to be removed out of the way. No matter then, though this business had been conducted for one year, or five years, if the testimony of Jerome Miller, and that of Mr. Miller, the plaintiff, is to be believed, it never could become a fraud in law, so far as Mrs. Housenick was concerned; because it was the work of her counsel.

" The agency of counsel is about as high an agency as we know of. The counsel of Mrs. Housenick was present when the paper was drawn up—at least when it was executed. The son, if he is to be believed, was present when the understanding was had. The counsel himself says he gave the old lady subsequent knowledge of all that had been done, and she said she hoped it would be for the best.

" Now, as between G. M. Miller and Mary Housenick, the allegation of a fraud in law could never be legally interposed in behalf of Mrs. Housenick, or her claim. It might be a fraud in law as against innocent creditors, seeing Mr. Yost doing business as he had done before; but never as to Mrs. Housenick.] Mr. G. M. Miller had stipulated that before he endorsed the notes, that execution should be removed out of the way. The counsel of Mrs. Housenick, a man of character and standing at the bar, had entered into the arrangement. Mr. Miller had endorsed the notes. He had taken—and so far as the law was concerned, had a right to take—into his possession all the goods in the store, and he had stipulated that when the sixty-five cents on the dollar had been paid to the city creditors, the balance of the property should be delivered to Mrs. Mary Housenick. [How any counsel, who was conversant with this transaction, as it has been shown here by the witnesses, could have issued a second execution and raised the claim now put forth here, passes my comprehension. Because, as between Mrs. Housenick and Mr. Miller, a fraud in law could not be alleged. It may have been unfortunate; we have nothing to say about that. If there had been any fraud in this transaction, it was the province of the counsel to have prevented it.] * * * [If you find from any of the testimony fraud connected with this

[Housenick *v*. Miller.]

matter, then the verdict should be in favor of the defendant. But if you find the transaction to be as stated by Mr. Jerome Miller, by the production of the papers, and by the whole circumstances, in connection with the case, then your verdict should be in favor of the plaintiff."]

The verdict was for plaintiff, and after judgment defendant took this writ alleging that the court erred in the portions of above charge included in brackets.

*L. H. Bennett* and *F. M. Nichols*, for plaintiff in error.—The attorney for Mrs. Housenick, in the absence of authority specially conferred, could not bind his client by his assent to, or acquiescence in, any contract with G. M. Miller, which involved a surrender of her legal rights, incident to her judgment against Yost: Stackhouse et al. *v*. O'Hara's Ex'rs., 2 Harris 88; Stokely *v*. Robinson, 10 Casey 315; The Dollar Savings Bank *v*. Cobb, 4 Brew. 106; Tompkins et al. *v*. Woodford, 1 Barr 156; Sarah Willis *v*. Joseph Willis, Adm'r., 2 Jones 159; Campbell's Appeal, 5 Casey 401.

A client is not bound by a ratification of an unauthorized act of his attorney unless it is affirmatively shown that the alleged ratification was preceded by full and complete knowledge on the part of the client of all the material facts and circumstances attending the transaction. This proposition is fully sustained by the following authorities: Pitts. & S. Railroad Co. *v*. Gazzam, 8 Casey 340; Moore's Executors *v*. Patterson, 4 Id. 505; Johann *v*. Inman, 17 Leg. Int. 190; Cumberland Coal Co. *v*. Sherman, 30 Barb. 533. There was no testimony whatever to connect Mrs. Housenick with the assignment or sale to Miller.

*A. H. Dickson* and *W. H. McCartney*, for defendant in error. —Mary Housenick, by not disaffirming the sale, which she said she "knew was going to be made" to Mr. Miller, thereby affirmed it. She could not stand by for nine months waiting to take advantage of the sale, and then come into court and denounce it as a fraud: Filby *v*. Miller, 1 Casey 264; Bredig *v*. Dubarry, 14 S. & R. 27; Kelsey *v*. National Bank, 19 P. F. Smith 426.

Mr. Justice GORDON delivered the opinion of the court, March 22d 1880.

The learned judge of the court below erred, in several particulars, when he said to the jury: "No matter, though this business had been conducted for one year, or five years, if the testimony of Jerome Miller, and that of Mr. Miller, the plaintiff, is to be believed, it never could become a fraud in law, so far as Mrs. Housenick is concerned, because it was the work of her counsel. The agency of counsel is about as high an agency as we know of. The counsel of Mrs. Housenick was present when the paper was

drawn up—at least executed. The son, if he is to be believed, was present when the understanding was had."

This assumes, 1. That Jerome Miller, as counsel for Mrs. Housenick, assented to the contract of the 14th December, between G. M. Miller, the plaintiff below, and W. C. Yost, whereas Mr. Miller says: " I was opposed to this compromise, and had a plan of my own to protect Mrs. Housenick's rights, as I thought." 2. It assumes an authority in Jerome Miller, by virtue of his position as defendant's attorney, to enter into a compromise by which not only her execution should be stayed, but her judgment postponed in the interest of other creditors of Yost. In Stokely *v*. Robinson, 10 Casey 315, it was held, that an attorney, by virtue of his professional relation, has no power to compromise his client's case, without the client's authority or sanction; and this doctrine is supported by the cases of Houston *v*. Mitchell, 14 S. & R. 307, and Stackhouse *v*. O'Hara's Ex'rs., 2 Harris 88. In the latter case it was said, per COULTER, J.: " An attorney-at-law in Pennsylvania has very extensive power in relation to conducting a suit, but after judgment this plenary power, in a great measure, ceases, excepting as to his power of receiving the amount of the judgment and giving a receipt for it." 3. An apparent force is given to the fact that the son of Mrs. Housenick was present at the execution of the paper in question, and yet there is no evidence that he either assented thereto, or had power so to do; on the other hand his testimony is to the contrary. In fact, it nowhere appears that Mrs. Housenick knew anything about the arrangement by which she was to be postponed to the creditors of Yost and Borden, whilst Yost's goods went to Miller as collateral security for his endorsements. It is said, indeed, that this arrangement was communicated to her by her counsel, and that she assented to it. She, however, denies this, and were there nothing else in this part of the case, yet this denial was sufficient to have required the submission of this question to the jury. Substantially, however, there was no conflict in this testimony. Mr. Miller says, " We talked the matter over, how it had been arranged; told her I was afraid, maybe Mr. Yost could not make it go; she said she hoped he could, and if he could it would be the best thing that could have been done; that everybody would be fixed then." Again, when asked to say whether he did communicate to his client the circumstances attending the sale to G. M. Miller, he says, he don't know that they went into it fully, but that it was spoken of as a compromise made, and that Yost was going to try to pay off his creditors. What kind of an assent was this to a contract about the making of which she had never been consulted, and to which neither she nor her counsel had ever assented? And who interested in this contract had ever asked her assent thereto? And how could this talk between herself and her counsel, and which

[Housenick *v.* Miller.]

was not even communicated to Miller, bind her to a contract she had never even seen? This evidence proved nothing for the plaintiff, or against the defendant; it was simply of no consequence in one way or the other; and yet, upon it the case is made to turn against the defendant. Not only so, but from this and other testimony of a like character, the case seemed so plain and obvious to the learned judge who tried it, that he informed the jury, that it passed his comprehension how any counsel, conversant with the transaction, as detailed by the witnesses, could have issued the second execution, and raised the claim set up for the defendant.

We can only say to this, as to most of the balance of the charge, that there was a total misconception of the case, and a consequent mis-trial thereof.

Judgment reversed, and a new *venire* ordered.