## Manieri v. City of Philadelphia.

*Municipalities—Compromise of claims—City solicitor—Attorneys-at-law.*

1. The city solicitor has no authority to compromise a claim against the city without authority from the council.

2. An attorney at law has no authority, merely by virtue of his retainer or employment, and without express authority, to bind his client by a compromise of a pending suit or other matter entrusted to his care.

3. The fact that the amount of the compromise may be a fair and just settlement is immaterial.

4. In such cases, the better practice is to require the plaintiff to make out a *prima facie* case, and then for the city solicitor to state to the jury the amount he thinks the plaintiff is entitled to recover, and for the questions of liability and amount to be submitted to the jury.

5. *Semble.* If the city solicitor had power to compromise a claim against the city, the agreement of compromise would bind his successor.

Philadelphia Charter Act of June 25, 1919, P. L. 581, 600, and earlier acts considered.

Petition and rule to open judgment. C. P. No. 1, Phila. Co., June T., 1925, No. 8704.

*Francis Shunk Brown,* for plaintiff.

*A. T. Ashton,* City Solicitor, for defendant.

### Manieri v. City of Philadelphia.

TAULANE, J., March 12, 1928.—Of the several questions raised by the defendant, the only one of merit and requiring consideration is whether the City Solicitor has authority to compromise claims against the City.

The facts are not in dispute. On Dec. 20, 1927, the board of viewers awarded the plaintiff $35,000 for the use and injury to his property, due to its temporary occupation by the City as a part of the site of the Sesqui-Centennial Exhibition. On Dec. 27, 1927, the plaintiff appealed from the award to the Court of Common Pleas, and on the same day—some five days before the expiration of his term of office—the then City Solicitor compromised and settled the plaintiff's claim for $50,000—being $15,000 more than the award. To carry the agreement into effect, the then City Solicitor and counsel for the plaintiff entered into a stipulation reading as follows:

"It is hereby expressly understood and agreed that formal pleadings in the above entitled proceedings shall be waived and the said case considered at issue, and that a verdict be taken in favor of the plaintiff and against defendant in the sum of $50,000."

The present City Solicitor was appointed and took the oath of office on Jan. 2, 1928. On Jan. 3, 1928, the first day of jury trials since the preceding November, the court, following a practice of some few years, permitted a verdict to be taken on the stipulation. At the time the court were not advised of any objection to the taking of a verdict, and the presiding judge did not notice that the stipulation was signed by the former City Solicitor.

Subsequently, judgment was entered on the verdict, and the City, on petition of the Mayor, moved to open the judgment on the ground that the settlement was excessive and that the former City Solicitor had no authority to compromise plaintiff's claim.

We opened the judgment because we were of the opinion that the City Solicitor has no authority to compromise claims against the City. Broad as are the powers of an attorney over his client's case, it is well settled that an attorney has no authority, by mere virtue of his retainer or employment and without express authority, to bind his client by a compromise of a pending suit or other matter intrusted to his care: Gray v. Howell, 205 Pa. 211; Jamestown, &c., Ry. Co. v. Egbert, 152 Pa. 53; Brockley v. Brockley, 122 Pa. 1; Isaacs v. Zugsmith, 103 Pa. 77; Mackey's Heirs v. Adair, 99 Pa. 143; Housenick v. Miller, 93 Pa. 514; Stokely v. Robinson, 34 Pa. 315, and Huston v. Mitchell, 14 S. & R. 307.

Has the City Solicitor, by virtue of his office, any authority, not possessed by an attorney in private practice, to compromise his client's cause? His authority to compromise, while acting as the City's attorney, is that, and that only, of an attorney, and without express authority he cannot compromise a claim against the City. His office confers on him no implied authority to compromise, and it has been so held wherever the question has arisen: Philadelphia v. McManes, 15 Phila. 51; City of Lebanon v. Lebanon & Annville Ry. Co., 1 Dist. R. 563; Bush v. O'Brien, 164 N. Y. 205; Stone v. Bank of Commerce, 174 U. S. 412, 423; and Taylor v. Mayor, 11 Abbott's Practice Reports, 66.

In Bush v. O'Brien, 164 N. Y. 203, 211, the court said: "It is claimed, however, that the powers of a city attorney, or corporation counsel, differ from those of an attorney employed by an individual. They undoubtedly do if the charters under which they are elected or appointed give to them greater or different powers; otherwise, not. This question has also been considered by the courts. In the case of Taylor v. Mayor, etc., 11 Abbott's Practice

Manieri v. City of Philadelphia.

Reports, 66, it was held that the corporation counsel of the City of New York had no larger powers, as such, to bind his client than those connected with the ordinary relations of attorney and client. And very recently, in the Supreme Court of the United States, in the case of Stone v. Bank of Commerce, 174 U. S. 412, 423, Peckham, J., in delivering the opinion of the court, says: 'We are also of the opinion that, as city attorney, he had no greater power to bind the city by that agreement than would an attorney have in the case of an individual.' "

Unless there is some statute or ordinance which authorized the then City Solicitor to compromise plaintiff's claim, he acted beyond his authority and his agreement is not binding on the City. The duties of the City Solicitor are defined in article XIII, section 3 (a), of the City Charter of June 25, 1919, P. L. 581, 600, and section 11 of the Ordinance of Dec. 31, 1919, pages 541, 550. The charter and the ordinance are in the same language and read as follows: "The city solicitor shall be the legal adviser and act as attorney and counsel for the city, for all branches of the city government, and for all departments and officers of the city. The authorization in writing of the mayor in all cases shall be a sufficient warrant of attorney for representing the city, its departments and officers."

The charter and ordinance, so far as they relate to the City Solicitor, are a substantial re-enactment of section 1 of article VIII of the Bullitt Bill of June 1, 1885, P. L. 37, 47, which merely redefined the City Solicitor's duties under section 15 of the Consolidation Act of Feb. 2, 1854, P. L. 21, and the ordinances passed pursuant thereto. (See opinion of Judge Allison in Philadelphia v. McManes, 15 Phila. 51.)

The charter, neither directly nor indirectly, vests any authority in the City Solicitor to compromise claims against the City, and the Ordinance of June 29, 1868, page 281, expressly prohibits the City Solicitor from compromising any claim without authority of councils. The ordinance reads: "No claim or suit against the City of Philadelphia shall in any way or manner be compromised by the city solicitor, or any other officer of the said city, unless the same is reported to the said committee on law, and an ordinance be by them submitted to councils and passed for the compromise and settlement of the same."

The exact point here involved was decided in Bush v. O'Brien, 164 N. Y. 205, where the corporation counsel of New York City, by virtue of his office and without express authority, compromised a claim against the city and agreed that judgment might be entered therefor. The court held that the judgment so entered was without authority and did not bind the city. And the New York cases cited by the plaintiff, if they support his contention, were expressly overruled in Bush v. O'Brien.

That the City Solicitor has no authority to compromise claims or confess judgment has long been recognized (see opinion of City Solicitor West, Opinions, 1883, page 33, and of City Solicitor Kinsey, Opinions, 1897, page 75), and to enable the City Solicitor to compromise municipal liens where the liened properties are not of sufficient value to satisfy the liens, an ordinance was necessary (Ordinances of 1906, page 143).

There is no merit in the City's other contention. If the former City Solicitor had authority to enter into the stipulation, it is too clear for argument that the expiration of his term of office before the verdict was taken in no way revoked the agreement. Of course, the former City Solicitor's powers ceased when he left office, but the termination of his powers did not annul any agreement he had authority to make merely because it had not been fully performed during his term of office.

Manieri *v.* City of Philadelphia.

So far as our recollection goes, the rather general practice of the City Solicitor of settling claims against the City by stipulation to take a verdict arose during the term of office of the former City Solicitor. We are informed that the practice in Court of Common Pleas No. 4 has been to compel the plaintiff to make out a *prima facie* case and then for the City Solicitor to state to the jury the amount he thinks the plaintiff is entitled to recover, and for the questions of liability and amount to be submitted to the jury. Of course, the juries generally find a verdict for the amount suggested by the City Solicitor.

In the case at bar there was nothing before the court and jury but the stipulation. Hereafter we propose adopting the practice of Court of Common Pleas No. 4, as we believe it is more in accordance with the law and better protects the interests of the City. If the City Solicitor had no authority to compromise the plaintiff's claim, it is immaterial that the amount of the compromise may be a fair and just settlement of the plaintiff's claim, and this was so decided, and we think rightly, in Bush *v.* O'Brien, 164 N. Y. 205.