## STONE *v.* BANK OF COMMERCE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

No. 362.   Argued February 28, March 2, 1899. — Decided May 15, 1899.

*Citizens' Savings Bank* v. *Owensboro*, 173 U. S. 636, followed to the point that in the case of a bank whose charter was granted subsequently to the year 1856, and which had accepted the provisions of the Hewitt Act,

and had thereafter paid the tax specified therein, there was no irrepealable contract in favor of such bank that it should be thereafter and during its corporate existence taxed under the provisions of that act.

The agreement set forth in the statement of facts between the city of Louisville, the sinking fund commissioners of that city, represented by the city attorney, and the various banks of that city acting by their attorneys, was not a valid agreement, within the power of an attorney at law to make.

An attorney, in his capacity merely as such, has no power to make any agreement for his client before a suit has been commenced, or before he has been retained to commence one; and if, under such circumstances, he assumes to act for his principal, it must be as agent, and his actual authority must appear.

An equitable estoppel which would prevent the State from exercising its power to alter the rate of taxation in this case should be based upon the clearest equity; and the payment of the money under the circumstances of this case, not exceeding the amount really legally due for taxes, although disputed at the time, does not work such an equitable estoppel as to prevent the assertion of the otherwise legal rights of the city.

THE bill in this case was filed in 1897 by the Bank of Commerce, a citizen and resident of the city of Louisville in the State of Kentucky, for the purpose of obtaining an injunction restraining the defendants from assessing the complainant and from collecting or attempting to collect any taxes based upon the assessment spoken of in the bill, and for a final decree establishing the contract right of the complainant to be taxed in the method prescribed by the act of May 17, 1886, known as the Hewitt Act, the terms of which it alleged it had accepted. The bill sought to perpetually enjoin the defendants from assessing the franchise or property of the complainant in any other manner than under that act. The material provisions of the Hewitt Act are set out in the opinion of the court, delivered by Mr. Justice White, in the case of the *Citizens' Savings Bank of Owensboro* v. *Owensboro*, 173 U. S. 636.

In 1891 Kentucky adopted a new constitution, section 174 of which, providing for the taxation of all property in proportion to its value, is also set forth in the above-cited case.

The legislature of the State in 1892 passed an act in relation to the taxation of banks and other corporations which was in conflict with the Hewitt Act, and provided for taxing the

banks in a different manner from that act, and also subjected the banks to local taxation, the total being much more onerous than that enforced under the Hewitt Act.

The complainant was incorporated under an act of the legislature of Kentucky approved February 10, 1865, and it had all the powers granted by that act and the several amendments thereof as alleged in its bill.

There were various other banks in the city of Louisville which also alleged that they had accepted the terms of the Hewitt Act, and by reason thereof had a valid contract with the State that they should be taxed only under the provisions of that act.

The complainant alleges in its bill that early in the year 1894 a demand was made on the part of the defendant the city of Louisville, based upon the act of 1892 and the ordinance adopted in pursuance thereof, for the payment of a license tax equal to four per cent of its gross receipts into the sinking fund of the city. The banks denied their liability to pay any tax other than that provided in the Hewitt Act, and hence arose the differences between the city and the banks.

No litigation had been commenced for the purpose of testing the questions at issue between the city and the banks, although negotiations looking to that end had been in progress between the city attorney of Louisville and the members of the sinking fund board, on the one hand, and the counsel for the various banks and trust companies on the other. There is set forth in the bill of the complainant the action of the sinking fund board as follows:

"SINKING FUND OFFICE, *Feb'y* 13, 1894.

"A committee, consisting of Messrs. Thomas L. Barrett, John H. Leathers and George W. Swearingen, appeared before the board on behalf of the banks who are members of the Louisville clearing house, and stated that it was the purpose of said banks to resist the payment of the license fee demanded of them under the license ordinance approved January 29, 1894, on the ground that said banks were not legally liable to pay the same, but, in order to save the sinking fund

from any embarrassment occasioned by their refusal to pay said license fee, the banks, with two or three exceptions, were willing to enter into an arrangement whereby they would pay a part of the amount demanded of them and lend the sinking fund the balance thereof, to be repaid, with interest at four per centum per annum, if it was finally decided and adjudged that the banks were not liable to pay said license fees.

"After discussion, the president was, on motion of Mr. Tyler, seconded by Mr. Summers, authorized to enter into the following arrangement with the different banks, trust and title companies who will be subject to the payment of the license fees if the license ordinance is finally adjudged to be valid and enforceable:

"First. To accept from each of said banks and companies a payment equal to the difference between the amount they now pay to the State for state taxes and the amount they would be required to pay for state taxes under the provisions of what is known as the 'Hewitt bill.' This sum shall be an actual payment, not to be repaid under any circumstances, but its payment shall not in any manner or to any extent prejudice the banks or companies paying it or be taken as a waiver of any legal right which they have in the premises.

"Second. In addition to making the above payments the said banks and companies, save those selected to test the question involved, shall each lend to the sinking fund a sum which, added to said payment, will equal four per centum of its gross earnings during the year 1893, and the sinking fund will execute for said loans its obligations agreeing to repay the same, with interest at four per centum per annum, when and if it shall be finally adjudged by the court of last resort that said banks or companies are not liable to pay the license fee required by the ordinance aforesaid, but if it is finally adjudged that they are liable to pay said license fee, then the said loan shall be taken and deemed as a payment of said license fee, and the obligation to repay the same shall be void.

"Third. The banks or companies selected to test the question involved will each lend the sinking fund a sum equal to four per centum of their gross earnings for the year 1893, and

will receive therefor the obligations of the sinking fund as above described.

"Fourth. This arrangement is to be entered into with the understanding that the said banks and companies will institute without delay and diligently prosecute such actions as may be necessary to settle and adjudge the right and liabilities of the parties in the premises, and pending such proceedings the sinking fund will not prosecute them or any of them for doing business without license.

"A true copy.    Attest:                J. M. TERRY,
                                *Secretary and Treasurer.*"

Following the above, the complainant's bill contains what is termed a "Stipulation between the city of Louisville, the commissioners of the sinking fund of the city of Louisville, and the banks, trust and title companies of the city of Louisville," which stipulation reads as follows:

"It is agreed between the city of Louisville, the commissioners of the sinking fund of the city of Louisville, represented by H. S. Barker, city attorney, acting under the advice and by the authority of the board of sinking fund commissioners, given at a regular meeting of said board, and the mayor of the city of Louisville, on the one part, and the various banks, trust and title companies of the city of Louisville, acting by Humphrey & Davie and Helm & Bruce, their attorneys, of the other part:

"First. That in February, 1894, it was agreed between the city of Louisville and the board of sinking fund commissioners, acting together in the interest of the said city, and the various banks, trust and title companies, acting through their committee, to wit, Messrs. Thomas L. Barrett, John H. Leathers and George W. Swearingen, and their counsel, to wit, Messrs. Humphrey & Davie and Helm & Bruce, that the question of liability of said banks and trust and title companies to pay municipal taxes, either license or *ad valorem*, otherwise than as provided by the revenue law, commonly known as the Hewitt bill, should be tested by appropriate litigation looking to that end.

"Second. In order to effectually test the question as to all of said companies they were divided into three classes, it being understood that all who had accepted the provisions of the said Hewitt bill would fall in one or the other of the classes named, to wit:

"A. Banks whose charters had been granted prior to 1856.

"B. Banks whose charters had been granted subsequent to 1856.

"C. National banks.

"It being understood that the trust and title companies which had accepted the provisions of the Hewitt bill would fall in class B, above named.

"Third. In pursuance of that agreement the sinking fund commissioners caused to be issued warrants against the Bank of Kentucky representing class A, the Louisville Banking Company representing class B, and the Third National Bank representing class C, and these banks respectively applied for a writ of prohibition against the city court of Louisville proceeding with the hearing, that being the manner pointed out by the city charter for testing the validity of city ordinances.

"It was distinctly understood and agreed at the time, and this agreement was made for the best interests of all parties to it, that if any bank in any class should eventually fail to establish the existence and validity of the contract which it was claimed was made under the Hewitt bill, that all of that class should thereafter regularly and promptly submit to the existing laws and pay their taxes; and it was also agreed that if any bank of any class should succeed in establishing a contract and the validity thereof under the Hewitt bill, that that should exempt all banks and companies falling within that class from the payment of taxes, except as provided in the Hewitt bill.

"Fourth. On the faith of this agreement all of the banks and companies aforesaid paid into the sinking fund the amounts of taxes claimed against them, under the terms and conditions named in the minutes of the sinking fund commissioners of February 13, 1894, an attested copy of which is hereto attached as part hereof, but at a later date and in further

reliance upon said agreement all said banks and companies, except those actually involved in the test cases, paid the whole of the amount of taxes claimed as against them by the city of Louisville without reservation, until the question thus raised should be finally disposed of.

HUMPHREY & DAVIE,<br>HELM & BRUCE,

*For Banks, Trust and Title Companies of the City of Louisville.*

H. S. BARKER, *City Att'y.*

Approved:                                    C. H. GIBSON,
*Pres't Com'rs Sinking Fund City of Lou.*

A true copy.     Attest:     HUSTON QUINN.
                             ARTHUR PETER.
                             M. McLOUGHLIN."

The Louisville Banking Company was one of the banks which brought an action for the purpose of testing the question of its liability to taxation. The charter of that company was granted subsequent to the year 1856, and, in that respect, it was like the defendant bank. It also claimed to have accepted the provisions of the Hewitt Act. In the litigation which followed, the Louisville Banking Company was adjudged by the Court of Appeals of Kentucky to have an irrepealable contract throughout its charter existence to be taxed under the Hewitt Act, and judgment pursuant to that adjudication was entered in favor of that company. The complainant herein claimed the benefit of the foregoing adjudication, and the Circuit Court allowed it, and gave judgment as follows:

"1. That the complainant is entitled to the benefit of the proceedings taken in the case of the *Louisville Banking Company* v. *R. H. Thompson, Judge, etc.*, in the Jefferson court of common pleas, and the proceedings taken in said cause on appeal to the Court of Appeals of Kentucky, wherein the Louisville Banking Company was appellant and the said R. H. Thompson, Judge, etc., and the city of Louisville were appellees, to the same extent as if the complainant had been a party to said proceedings.

" 2. That it is *res judicata* between the complainant and the city of Louisville that the complainant is entitled to be taxed under what is known as the Hewitt revenue law and not otherwise, and it is therefore adjudged, ordered and decreed that the defendants Samuel H. Stone, Charles Findley and George W. Long are perpetually enjoined and restrained from making any assessment under the act of November 11, 1892, or certifying the same to the city of Louisville upon any rights, properties or franchises, or shares of stock of the complainant, and that any provisions of the constitution of the State of Kentucky and any provision of the said act of November 11, 1892, or of the city charter which may be construed as authorizing the levy or assessment of any tax against the complainant, its rights, properties or franchises, other than as allowed by the said Hewitt law is, during the corporate existence of the complainant, unconstitutional and void, and that the complainant and its shares of stock are exempt from all other taxation whatsoever, except as prescribed in the said Hewitt law, so long as said tax shall be paid during the corporate existence of complainant."

The defendants appealed directly to this court from the judgment of the Circuit Court, under the provisions of section 5 of the act of March 3, 1891, c. 517, 26 Stat. 826, because the case involved the application of the Constitution of the United States, and because a law of the State of Kentucky was claimed to be in contravention of that Constitution.

*Mr. Henry L. Stone* for Louisville. *The Attorney General of Kentucky* filed a brief for Stone.

*Mr. Alexander Pope Humphrey, Mr. Frank Chinn, Mr. James P. Helm* and *Mr. John W. Rodman* for the banks.

MR. JUSTICE PECKHAM, after stating the facts, delivered the opinion of the court.

We have already decided, in *Citizens' Savings Bank of Owensboro* v. *Owensboro,* 173 U. S. 636, that in the case of a bank whose charter was granted subsequently to the

year 1856, and which had accepted the provisions of the Hewitt Act, and had thereafter paid the tax specified therein, there was nevertheless no irrepealable contract in favor of such bank that it should be thereafter and during its corporate existence taxed under the provisions of that act. And in the same case we held that the bank was properly taxed under the act of the legislature of Kentucky passed in 1892. Unless the complainant is right in its contention that it is a privy to the judgment in the case of the Louisville Banking Company, (mentioned in the foregoing statement,) and that the question is *res judicata* in its favor, the complainant has failed to make good its claim to be exempted from the provisions for its taxation under the act of 1892. The Circuit Court has held that the complainant was entitled to be regarded as privy to the judgment above mentioned in favor of the Louisville Banking Company, 88 Fed. Rep. 398, and that it could therefore avail itself of the judgment in that case as *res judicata.*

The sole question to be determined in this case is as to the validity and effect of the agreement above set forth. The complainant herein was not in fact a party to the judgment in the *Louisville Banking Company case*, and it can only obtain the benefit of that judgment by virtue of the agreement.

The commissioners of the sinking fund form a separate and distinct corporation from the city of Louisville, and no right is shown to sign or make the agreement for itself or to bind the city thereby. The agreement is not signed by the mayor, nor is it pretended that there was any action on the part of the general council of the city authorizing the making of the agreement. It was signed by the city attorney, and if he had no power to sign on behalf of the city there is nothing to create any liability on its part by virtue of the agreement, unless the payment of the money therein spoken of operates by way of estoppel to prevent the city from setting up the invalidity of such agreement. The effect of the payment of the money will be adverted to hereafter.

Upon its face there is no agreement even formally made between the city of Louisville and the banks of which the complainant herein is one, unless the signature of the city

attorney makes a valid agreement for the city. When the agreement was made no suit had been commenced by any of the parties; no litigation in regard to matters in dispute was pending. Prior to the making of the agreement it was a question altogether in the future as to what means should be adopted, and what suits commenced, for the purpose of establishing the rights of the various parties, as claimed by them. The question as to what course should be pursued was not one of law only. It was also one of policy. The stipulation actually entered into was of an administrative as well as of a legal nature, involving the administration of the law regarding taxation and the best means of determining the legal questions involved in the dispute, while at the same time obtaining, so far as possible, payment of the taxes claimed by the commissioners of the sinking fund as due from the various banks and trust companies. These were questions which an attorney would have no power to decide, and concerning which he would have no power to make any agreement.

An attorney, in his capacity merely as such, has no power to make any agreement for his client before a suit has been commenced or before he has been retained to commence one. Before the commencement of a suit, or the giving of authority to commence one, there is nothing upon which the authority of an attorney to act for his client can be based. If before the commencement of any suit an attorney assumes to act for his principal it must be as agent and his actual authority must appear, and if it be not shown it cannot be inferred by comparison with what his authority to act would have been if a suit were actually pending and he had in fact been retained as attorney by one of the parties. The authority of an attorney commences with his retainer. He cannot while acting generally as an attorney for an estate or a corporation accept service of process which commences the action without any authority so to do from his principal. This was directly decided in *Starr* v. *Hall*, 87 N. C. 381, and *Reed* v. *Reed*, 19 S. C. 548, so far as regards a personal defendant, but the same rule would follow in case of a corporation unless authority to appear were specially given.

When an attorney has been retained he has certain implied powers to act for his client, in a suit actually commenced, in the due and orderly conduct of the case through the courts. In cases of suits actually pending he may agree that one suit shall abide the event of another suit involving the same question, and his client will be bound by this agreement. *Ohlquest* v. *Farwell*, 71 Iowa, 231; *North Missouri Railroad Company* v. *Stephens*, 36 Missouri, 150; *Eidam* v. *Finnegan*, 48 Minnesota, 53; *Gilmore* v. *American Central Insurance Company*, 67 California, 366; 1 Lawson's Rights, Rem. & Pr., section 173, page 292; 1 Thompson on Trials, section 195.

One case has gone to the extent of holding the attorney's authority to agree that the case of his client should abide that of another, included his right to agree that the case should abide that of another involving the same question, although his client was not a party to that case and had no power to interfere in its prosecution or defence. *Scarritt Furniture Company* v. *Moser*, 48 Mo. App. 543, 548.

There might perhaps be some doubt about the correctness of a decision which so extended the power of the attorney. It would be carrying the authority of an attorney a good way to thus hold. It is not, however, in the least necessary for us to decide the question in this case.

All the above cases relate to the authority of the attorney after the actual commencement of suit and after the jurisdiction of the court has attached and the agreements made were in the discharge of the duties owing as between attorney and client, and subject to the supervision and power of the court itself.

Nothing of the kind exists in the agreement here in question. It is more than a mere agreement of an attorney to abide the event of a decision in an actually existing suit. This agreement was not in the execution of the general power of an attorney to decide upon the proper conduct of a suit then on its way through the courts. It was an agreement much more than that, and of a different nature. As we have said, the question to be determined was one of policy as well as of law; eminently one for the consideration of the city authorities, its

mayor and its general council, aided and assisted by the advice of the attorney of the city.   But it was a decision of a corporate nature, and not one to be decided by any but the corporation, and it was one which we think was beyond the power of an attorney to make while acting merely in his capacity as attorney before suit brought and without specific authority.

We are also of opinion that as city attorney he had no greater power to bind the city by that agreement than would an attorney have in the case of an individual.  The power of an attorney to conduct an actually existing suit, and in its proper conduct to agree to certain modes or conditions of trial, cannot be enlarged by implication, so as to embrace a power on the part of an attorney, before litigation is existing and before he has been retained to conduct it, to enter into an agreement of the nature of this one.   It might be convenient to have such power and the commencement of a suit and a retainer to defend may be a mere technicality, but the power of an attorney depends upon the authority given him to commence a suit or to defend a suit actually brought, and he has no power as an attorney until such fact exists.

Section 2909, Revised Statutes of Kentucky, provides that —

"There shall be elected by the general council, immediately upon the assembling of the new board, a city attorney, whose duty it shall be to give legal advice to the mayor and members, of the general council, and all other officers and boards of the city in the discharge of their official duties.   If requested, he shall give his opinions in writing, and they shall be preserved for reference.   It shall also be his duty to prosecute and defend all suits for and against the city, and to attend to such other legal business as may be prescribed by the general council."

We do not think this section gave him the power to bind the city by the agreement in question.   He is undoubtedly the retained attorney of the city in every suit brought against it, and it would have been his duty to take charge of the litigation when it should arise between the banks and the commissioners of the sinking fund or the city of Louisville.   That is, when the suit was commenced, the statute operated in place

of a retainer in case of a personal client. When suits were commenced against the city it was his duty to defend them, but he had no power to appear for the city as a defendant in a suit which had not been commenced or to accept service of process and waive its service upon the proper officer, without. authority from that officer. Merely as city attorney, he had no larger powers to bind his clients before suit was commenced than he would have had in the case of an individual in like circumstances. There must be something in the statute providing for the election or appointment of an attorney for a corporation that would give such power; otherwise it does not exist. We find nothing of the kind in the statute cited. The Supreme Court of New York held, at special term, that the counsel to the corporation of the city of New York had no greater powers than an ordinary attorney to bind his client. *People* v. *Mayor &c. of New York*, 11 Abb. Pr. 66.

The agreement here in question, it is perceived, is much more extensive than a mere agreement to abide the event of another suit, and it is quite plain that it embraces more than the attorney had the right to bind the city to, even if an action had then been commenced and the agreement was made in that action. However imperative may have been his duty to save costs and expenses to the city, he was not authorized on that account to enter into agreements of the nature of this one, where no suits had been commenced against the city and the commencement of which he had no power to provide for.

Nor do we see that the commissioners of the sinking fund were granted any power to make the stipulation in question; certainly none to bind the city of Louisville. Our attention has not been drawn to any statute giving them power to make an agreement of this nature.

Parties dealing with a municipal corporation are bound to know the extent of the powers lawfully confided to the officers with whom they are dealing in behalf of such corporation, and they must guide their conduct accordingly. *Murphy* v. *Louisville*, 72 Kentucky; 189.

As a result, we think the stipulation was not a valid one,

binding either the commissioners of the sinking fund or the city of Louisville.

It is contended, however, on the part of the complainant that the payment of the money to the commissioners of the sinking fund, pursuant to the provisions of the stipulation, and its receipt by them, estops the city of Louisville from asserting the invalidity of the stipulation. The claim of complainant on this branch of the case is in substance that it has the right under the agreement to the benefit of the judgment in favor of the Louisville Banking Company as *res judicata* in its favor, because the city, having received the money by virtue of the agreement, is estopped by that fact from insisting upon its invalidity.

The money was paid to the commissioners of the sinking fund and not to the city, which is a separate and distinct corporation. No corporate act on the part of the city is shown since the payment which recognizes or approves it. There is no ratification by the city of Louisville of this unauthorized act of its attorney. In speaking of the act of the attorney as unauthorized we do not mean to reflect in the slightest degree unfavorably upon the conduct of the city attorney, which seems by this record to have been prompted solely by a regard for the best interests of the city and by the most scrupulous good faith. We speak only of the act as one for which the law would not hold the city answerable.

But let us look for a moment at the position occupied by the respective parties and the facts which surround this alleged estoppel upon the city, and for this purpose the invalidity of the agreement is assumed. The banks of which complainant was one, at the time this agreement was entered into, conceded that they were liable to the payment of taxes under the Hewitt Act, and denied that they were liable to pay taxes under the act of 1892. The city, on the contrary, asserted the right to tax under the act of 1892, and the question became one for judicial decision. The banks paid the moneys spoken of in the agreement, and proceedings were inaugurated to test the legal question involved in the dispute.

It is alleged on the part of the complainant that the taxes under the act of 1892 were and are greater in amount than under the Hewitt Act, and it is not alleged or contended that the amount of moneys paid by the various banks was any greater than would have been due and payable under the act of 1892. That is, the banks have in fact paid no more than they ought to have paid if they had complied with the provisions of the act of 1892. This court has just decided in the *Owensboro case* (above cited) that the claim, on the part of the banks, of an irrepealable contract under the Hewitt Act was not well founded, and that the banks (so far as concerns that contention) have been liable to pay taxes under the act of 1892 ever since that act was passed. The complainant now asserts that because the banks paid the money which they did under the agreement above mentioned, (although such money was certainly no more than they were legally bound to pay under the act of 1892,) therefore the city is estopped from setting up the invalidity of this agreement. The result would be that complainant by virtue of the judgment in the *Louisville Banking Company case* could only be taxed under the Hewitt Act for the remainder of its corporate existence, although the act of 1892 is a perfectly valid act under which, but for the judgment above mentioned, the complainant would be liable to much greater taxation than the Hewitt Act provides for. We think these facts form no basis for the equitable estoppel claimed by the complainant. The payment of money by complainant under the agreement, when it ought to have paid at least as large a sum under the act of 1892, but which it refused to pay under that act, because it denied the validity thereof, we think is not the basis for an appeal to the equitable powers of a court. As a result of the judicial inquiry, it is seen that the banks have been at all times liable to pay taxes under the act of 1892. The fact that they disputed this liability and paid the money under an agreement which did not admit the validity of the act of 1892, forms no basis for this equitable estoppel, when the fact appears that the moneys actually paid were certainly no more than the banks were liable to pay under

the disputed act.   If, however, it were found that the banks
had paid at any time an amount greater than they would
have been liable to pay under the act of 1892, the city, by
the passage of the ordinance approved August 6, 1895, pro-
vided a means for crediting any bank with the amount of
such overpayment.   In no way, therefore, has the complain-
ant been legally damaged by the payment of the money to
the sinking fund.   The only thing that may be said is, that
by virtue of the agreement, the complainant paid, and the
sinking fund received, the money at the times mentioned,
which, otherwise would have been refused; but when we come
to consider that, although the legal question was in dispute,
the right was really with the city, and the banks were really
liable to pay taxes under the act of 1892, we think the pay-
ment they then made under the agreement would form no
equitable estoppel in favor of complainant.   If so, it would
thereby be enabled to secure for itself the benefit of the
plea of *res judicata,* and would thus prevent the application
of the act of 1892 to it during its corporate existence.   This
result would not, in our opinion, be an equitable one, and as
complainant has not in reality suffered legal injury by the
payment of the money, there is no basis for the support of
an estoppel.

An equitable estoppel which is to prevent the State from
receiving the benefit of an exercise of its power to alter the
rule or rate of taxation for all the time of the existence of a
business corporation, should be based upon the clearest equity.
It is fitly denominated an equitable estoppel, because it rests
upon the doctrine that it would be against the principles of
equity and good conscience to permit the party against whom
the estoppel is sought to avail himself of what might other-
wise be his undisputed rights.   The payment of money under
the circumstances of this case, not exceeding the amount
really legally due for taxes, although disputed at the time,
does not seem to work such an equitable estoppel as to pre-
vent the assertion of the otherwise legal rights of the city.

Nor does the fact that the complainant bank, upon the
execution of the agreement, omitted to sue and obtain

judgment against the city, add any force to the claim of estoppel.

The complainant, it must be assumed, knew the invalidity of the agreement because of the lack of power on the part of those who signed it to bind the city or the sinking fund as a corporation. There was no dispute as to facts, and no misrepresentations were made. The law made the invalidity. Knowing the agreement to be invalid, the omission to sue forms no ground upon which to base the estoppel. The complainant had no valid agreement upon which to stand, and if it omitted to sue it was at its own risk. There would seem to be no reason of an equitable nature springing out of the facts herein why the complainant should not hereafter be bound to pay the taxes prescribed in the act of 1892.

*We think the judgment of the Circuit Court should be reversed and the case remanded with instructions to dismiss the bill, and it is so ordered.*

MR. JUSTICE HARLAN and MR. JUSTICE WHITE dissented.