## SHERIDAN v. CITY OF NEW YORK.

(District Court, S. D. New York. March 13, 1906.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—POWER OF DOCK MASTER TO BIND CITY OF NEW YORK.

Under Ash's Greater New York Charter (2d Ed.) § 419, which provides that "no expenditure for work or supplies involving an amount for which no contract is required shall be made except the necessity therefor be certified to by the appropriate borough president or the head of the appropriate department, and the expenditure has been duly authorized and appropriated" a dock master unless duly authorized by the department of docks and ferries has no power to bind the city to pay for work done by his direction.

2. SAME—UNAUTHORIZED CONTRACT BY AGENT.

Persons dealing with a municipal corporation through its agent are bound to know the extent of the agent's authority and the corporation cannot be subjected to liability on a contract which he was not authorized to make.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 581, 684, 879.]

In Admiralty.

Martin A. Ryan, for libellant.

John J. Delany and E. Crosby Kindleberger, for respondent.

ADAMS, District Judge. This action was brought by Theresa A. S. Sheridan against the city of New York to recover for the transportation of 662 cart loads of dirt dumped into the libellant's scows at the foot of Ninety-Sixth street, North river, and carried thence by her to a dump of the libellant in the city between October 1, 1899, and April 30, 1901. It is alleged that the usual and customary charge for such services was 40 cents per each cart load and that the sum due the libellant is $264.80. The answer admits that between the stated times, certain carts marked "Department of Docks and Ferries" did the alleged dumping for which 40 cents per load was a fair and reasonable price. It was stipulated on the trial that the carts which carried the dirt were hired by the city from Thomas Kelly at $3.50 per day; Kelly to furnish the drivers, and the carts were to be under the direction and control of the city. It was also admitted that the dock master in the immediate charge of the performance of the work of cleaning up the marginal street in the vicinity of Ninety-Ninth street and the North river, directed the drivers of said carts to deliver the dirt at the dump of the libellant. The answer also admits that the libellant presented bills for the work to the city and the city returned the same, suggesting to the libellant to proceed against the owner of the carts; that the libellant thereupon brought an action in this court, which was dismissed, on the ground that no cause of action against Kelly was proved. The city now, however, defends on the ground that the dock master exceeded his authority in ordering the carts to libellant's dump; also on the ground that the contract was void because certain provisions of the charter of the city were not complied with.

The testimony shows that the libellant never had any contract with the city excepting such as might arise from the acts of the dock master as stated above and the question is, did the dock master have authority to bind the city for work done under his orders.

It is contended by the libellant that the question is not raised by the pleadings. It, however, appears in the answer, after various denials, as follows:

"Seventh. Further answering the matters set forth in the libel herein, the respondent, the city of New York, upon information and belief alleges that the carts in question marked 'Department of Docks and Ferries' were not owned by the city of New York, but were hired from one Thomas Kelly, and that during the times mentioned they were employed in cleaning up the marginal street in the vicinity of Ninety-ninth street and the North river. That in the performance of this work the carting of considerable dirt was required, and that the dock masters in immediate charge of the performance of this work, without authority directed the drivers of said carts to dump said dirt at the dump of the libellant herein, instead of at the dumps of the department of street cleaning, as they were instructed to do. That the department of docks and ferries directed the dock masters to deliver to the drivers of each cart a ticket, which should be presented by such driver at a dump of the department of street cleaning of the city when each load of dirt was dumped. That such tickets were delivered by the drivers of the carts in question to the libellant's agents, at her dump at ninety-sixth street as aforesaid, and that libellant knew or should have known that such dumping at her dump was unauthorized by the department of docks and ferries."

The ticket in question read as follows:

"Department of Docks and Ferries.

One Load Dirt.

At Street Cleaning Dep't Dump.

This ticket only good when presented by drivers of carts marked 'Department of Docks and Ferries.'"

The provision of the statute with reference to the contracting of debts by the city appears in Greater New York Charter (2d Ed.) p. 263, § 419; by Ash, and is as follows:

"No expenditure for work or supplies involving an amount for which no contract is required shall be made, except the necessity therefor be certified to by the appropriate borough president or the head of the appropriate department, and the expenditure has been duly authorized and appropriated."

The libellant testified that she did not know what was required to be done in order to effect a valid contract with the city and her agent, in charge of this work, said there was nothing done directly with the head of the department. It appears that the dock masters, who were in immediate charge of cleaning up the docks in the vicinity of Ninety-Ninth street, had no authority from the head of the department to make any contracts of this kind.

It is a case where the equities were with the libellant, but to hold a municipal corporation liable, it must appear that some one authorized to bind it was instrumental in making the contract. Here it was made with a dock master, whose duties were not in the direction of making contracts for the city. Their functions are defined by the rules and regulations prescribed by the commissioner of docks, put in evidence by the libellant, and reference is made by her to section 6, which provides:

"Sec. 6. Dock masters shall prevent any accumulation of material upon the piers, wharves, bulkheads and reclaimed land in their respective districts; and whenever any pier, wharf, bulkhead or reclaimed land in the city of New York shall be encumbered or obstructed in its free use by any vessel, merchandise or material in transit or otherwise, or by any structure, encumbrance or obstruction not authorized or permitted by the commissioner of docks, the dock master of the district in which such encumbrance or obstruction shall exist is authorized to require the owner, agent, consignee, or person occupying or in charge of such to remove the same without delay. Upon receiving said order, the owner, agent, consignee, or person in charge of the vessel, merchandise, material, structure, encumbrance or obstruction, as the case may be, in reference to which said order or direction was given, shall comply with the same without delay, and in default thereof, the dock master may employ such assistance as may be necessary to carry into effect his order or decision by the removal of such vessel, merchandise, material, structure, encumbrance or obstruction, in respect to which the order was given. All expenses actually and necessarily incurred in effecting such removal, and for storage of merchandise or material thus removed, shall be paid by the owner, agent, consignee or person in charge, and the amount thereof shall be a lien upon the same, in favor of the city of New York."

It is urged that under this section a dock master has the right to employ whatever aid or help which may be necessary to remove obstructions from the dock, or dock lands, making it a case where the dock master had authority to negotiate terms for removing obstructions and having the same charged to the city. Assuming that the dock master had authority to negotiate the terms, it is quite a different thing when the question of authority to charge the work to the city is concerned. The latter was a matter for the consideration of the head of the department, and it does not in any way appear here that such authority was delegated to the dock master.

Many authorities establish the proposition that persons dealing with municipal corporations are required to know the extent of the authority of the agent with whom they deal. One of the latest is Stone v. Bank of Commerce, 174 U. S. 412, 19 Sup. Ct. 747, 43 L. Ed. 1028, where it was said (page 424 of 174 U. S., page 752 of 19 Sup. Ct., 43 L. Ed. 1028):

"Parties dealing with a municipal corporation are bound to know the extent of the powers lawfully confided to the officers with whom they are dealing in behalf of such corporation, and they must guide their conduct accordingly. Murphy v. Louisville, 72 Ky. 189."

The strict enforcement of a rule of this kind, often works a hardship, as it does in this case; but municipal corporations should not be subject to liability for debts contracted by unauthorized agents.

The libel will be dismissed.