## WHEELOCK et ux. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7335.

Circuit Court of Appeals, Fifth Circuit.
May 9, 1935.

Harry C. Weeks, of Wichita Falls, Tex., for petitioners.

Frank J. Wideman, Asst. Atty. Gen., Norman D. Keller, Sewall Key, and J. P. Carr, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and Frank B. Schlosser, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

By petition for review the petitioners, husband and wife, complain of the disallowance of a claimed deduction from their income in the year 1923 of an amount representing depreciation on equipment and appliances used by them in that year in their business of producing oil.

A summary of the material facts, as stipulated and found by the Board of Tax Appeals, follows: At all times material to the separate petitions for redetermination of income tax deficiencies, filed by the petitioners with the Board of Tax Appeals, petitioners were husband and wife, residing together and domiciled in the state of Texas. (Under the law of Texas the property and income involved in the cases belonged to the community comprised of petitioners.) In August, 1923, R. L. Wheelock acquired a 7/16 working interest in and to an oil and gas lease on a described tract of land, containing 38 acres, in Navarro county, Tex., pursuant to an agreement which provided for title to the property being in E. L. Smith Oil Company, Inc., and that that company was to have full charge of the operations of the lease, and in case of any production, pipe line checks to come to that company, and all bills to be paid by that company, R. L. Wheelock to be charged with one-half of the oil runs, and any difference to be settled promptly. Acting under that agreement, the E. L. Smith Oil Company proceeded to prospect for oil on said 38-acre lease, hereinafter referred to as the Wheelock-Smith lease. On October 21, 1923, the E. L. Smith Oil Company brought in its first well on the Wheelock-Smith lease. Thereafter, and before December 31, 1923, the property was fully developed by the drilling thereon of eight additional wells, all of which were completed prior to December 31, 1923. Between October 12, 1923, and December 31, 1923, the E. L. Smith Oil Company installed in the Wheelock-Smith lease well equipment, lease equipment, and other depreciable assets having an aggregate cost of $167,244.22, which equipment was used in the production of oil in 1923. The full amount of development, operation, and equipment costs were capitalized on the books of the E. L. Smith Oil Company, and, under date of December 31, 1923, the following charge was made to the running account of R. L. Wheelock on the books of the E. L. Smith Oil Company: "Dec. 31, 1923. ½ Equipment Wheelock Lease to Dec. 31, 1923, $83,622.11." During the calendar year 1923, there were produced and sold from petitioners' interest in the Wheelock-Smith lease, 237,766.57 barrels of oil, for which petitioners received through the E. L. Smith Oil Company within the taxable year the net sum of $210,940.14. In the computation of the deficiency which petitioners sought to have redetermined, the Commissioner determined that it was apparent at October 12, 1923, or within 30 days thereof; that petitioners' 7/16 of the oil reserves underlying the Wheelock-Smith lease totaled 552,037.71 barrels; that petitioners' capital sum with respect thereto recoverable through depletion was $308,028.-28; that there were produced and sold from petitioners' 7/16 interest in the lease within the taxable year 1923, 219,905.50 barrels of oil; and that the depletion sustained as a result of the extraction and sale of said oil was the sum of $122,702.87, computed at the rate of 55.798 cents per barrel.

Petitioners' records for the year 1923 were kept on a cash receipts and disbursements basis, and petitioners' returns for that taxable year were made on a like basis.

On their books and in their income tax returns for the calendar year 1923, which returns were filed on March 15, 1924, petitioners claimed no deduction in any amount as and for depreciation sustained on their investment in lease equipment on the Wheelock-Smith lease, nor has the respondent ever allowed any deduction therefor. Petitioners' entire interest in and to the Wheelock-Smith lease, including the equipment thereon, was sold by the petitioners on or about March 18, 1924, for the sum of $250,000. In filing their income tax returns for the calendar year 1924, petitioners, in computing their gain from the sale, deducted from the sale price of the lease and equipment the full original cost of the lease equipment. Upon audit, this computation was approved by the respondent. Thereafter, petitioners' income tax liability for the taxable year 1924 was finally settled by an agreement, under date March 11, 1929, executed under the provisions of section 606 of the Revenue Act of 1928 (26 USCA § 2606).

Petitioners' net income from the Wheelock-Smith lease for 1923, exclusive of any allowance for depreciation of lease equipment, was the sum of $197,576.60, composed of selling price of oil, $210,940.14, less operating expenses of $13,363.54.

On February 29, 1928, notices were mailed to both petitioners advising them of

the deficiency in the income taxes of each of them for the year 1923 in the amount of $1746.35. Petitioners' original petitions for redetermination were filed with the Board of Tax Appeals on April 26, 1928, each of them filing an amended petition on May 10, 1932. The claimed right of the petitioners to a deduction for depreciation of lease equipment on the Wheelock-Smith lease for 1923 was first raised in the just-mentioned amended petitions.

Each of those amended petitions contained the following: "(c) During the year in question, the petitioner owned an undivided one-half (½) interest in the equipment and appliances located upon the Wheelock-Smith Lease above referred to, and used in the production of oil, and was entitled to deduct, with respect to said equipment, an allowance for depreciation in computing his income for that year, but the Respondent made no allowance for depreciation whatsoever. Petitioner says that the amount invested in said equipment should be depreciated on the unit of production basis; that her total investment in said equipment at the close of the year 1923 was $83,622.11; that the probable salvage value of said equipment was ten per cent of the amount thereof, so that the net amount subject to depreciation was $75,259.90. Petitioners' share of the recoverable reserves of oil from said property, as fixed by the Respondent, is 552,038 barrels. Petitioner is therefore entitled to use a depreciation unit of $0.13633 per barrel, which applied to his share of the oil produced, as above set forth, gives a depreciation allowance of $32,414.72."

By answer to each of the amended petitions, the respondent denied that he erred in failing to allow depreciation with respect to sums invested in oil equipment and used throughout the tax year in the production of oil; and in the alternative set up that the petitioner is now estopped to assert that deductible depreciation was sustained in 1923 on said equipment.

Pursuant to stipulation, the cases were consolidated for hearing before the Board of Tax Appeals, and for review by this court. The Board decided some of the issues in favor of petitioners, and held that the petitioners were estopped to claim deduction for depreciation of equipment in 1923, and disallowed that claim.

The right to claim a deduction, in determining income tax, is a statutory privilege. New Colonial Ice Co. v. Helvering, 292 U. S. 435, 54 S. Ct. 788, 78 L. Ed. 1348; Squier v. Commissioner (C. C. A.) 68 F. (2d) 25. The taxpayer may waive that privilege or by estoppel lose the right to exercise it. There was abundant support for the conclusions that the petitioners waived the privilege of deducting from their gross incomes in 1923 a sum representing depreciation of equipment on the Wheelock-Smith lease, and that they became estopped to claim such a deduction. It well might have been inferred that when the petitioners filed their income tax returns for 1923 on March 15, 1924, and when those returns were prepared for them, they gave no thought to the matter of deduction for depreciation of lease equipment, as was indicated by petitioner R. L. Wheelock's testimony, because at that time they contemplated the sale of their entire interest in the Wheelock-Smith lease, including equipment thereon, for $250,000, which sale was consummated on or about March 18, 1924, and realized that it would be to their advantage, in computing, in their income tax returns for the year 1924, their gain from the sale, to deduct from the sale price of the lease and equipment the full original cost of the lease equipment. By claiming that deduction in their income tax returns for 1924, the petitioners evidenced their election to recover in full the cost of the depreciable equipment by getting that deduction allowed, rather than to recover part of that cost by a deduction for depreciation of lease equipment from their gross incomes in 1923, leaving only the amount of the remainder of such cost to be deducted from their gross incomes in 1924. The acts of the petitioners in claiming in their income tax returns for 1924 that they were entitled to deduct from the sale price of the lease and equipment the full original cost of the lease equipment were inconsistent with their retaining the right to recover part of that cost by means of deductions from their gross incomes in 1923 for depreciation of the same lease equipment. It is not reasonably conceivable that the deductions in petitioners' returns for 1924 of the full original cost of the lease equipment would have been approved if the respondent had understood or believed that the petitioners retained the inconsistent right to deduct from their gross income in 1923 amounts representing depreciation of the same lease equipment. The conduct of the petitioners,—their acts in taking deductions in their returns for 1924 which were inconsistent with their having or retaining the right to recover part of

their investment in lease equipment by depreciation deductions from their 1923 gross incomes, and their silence, at the time of the allowance of the mentioned deductions from their 1924 gross incomes, and throughout the proceedings before the respondent with reference to their income tax liability for the years 1923 and 1924, as to the matter of deductions for depreciation of lease equipment,—warranted, not only the inference that the respondent was influenced in allowing the deductions taken in petitioners' returns for 1924 by the belief that petitioners had waived their right to deduct from their gross income in 1923 amounts for depreciation for the same lease equipment, but also the inference that petitioners actually had waived their right to take the last-mentioned deductions. One possessing a right, and knowing all the attendant facts, waives that right by claiming and procuring the enforcement of an inconsistent right; and that such waiver occurred may be inferred from his acquiescence or silence when asserting an inconsistent right, as well as from his express consent or agreement. Marine Iron Works v. Wiess (C. C. A.) 148 F. 145, 155. Nothing contained in the record indicates that the action of the respondent in allowing the deduction of the full cost of the lease equipment from petitioners' gross incomes in 1924 was modified in any respect prior to or at the time of the execution of the agreement finally settling petitioners' income tax liability for 1924. In view of the fact that the matter of deduction for depreciation of lease equipment was never mentioned in any of the proceedings before the respondent, it cannot reasonably be supposed that there was any diminution of the deductions of the full original cost of the lease equipment.

■■ The petitioners, by conduct indicating their election to waive the right to deductions from their incomes in 1923 for depreciation of lease equipment, and by claiming and procuring the allowance of deductions from their incomes in 1924 of the full original cost of the lease equipment, lost the right to deductions from their incomes in 1923 for depreciation of lease equipment, because when that right was first asserted the right to diminish the allowed deductions from their incomes in 1924 covering the total cost of lease equipment was barred. Rose v. Grant (C. C. A.) 39 F.(2d) 340; Commissioner v. Moore (C. C. A.) 48 F. (2d) 526. It would be against the principles of equity and good conscience to allow the petitioners' deductions from their incomes in 1923 for depreciation of lease equipment, when by their silence as to the existence of such a right they induced the respondent to believe that that right did not exist or would not be exercised, and the latter rightfully acted on that belief, with the result of losing the right to reduce the allowed deductions from petitioners' gross incomes in 1924 of the total original cost of the lease equipment. In the circumstances disclosed, the petitioners were conclusively estopped from claiming the right to deductions from their gross incomes in 1923 for lease equipment. Stone v. Bank of Commerce, 174 U. S. 412, 19 S. Ct. 747, 43 L. Ed. 1028; Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79. Having by their own conduct brought about respondent's allowance of a claim inconsistent with the one now asserted, and a change of respondent's position whereby the latter is prevented from correcting the error in such allowance which would result from approving the deductions now claimed, the petitioners were precluded from enforcing their last asserted claims. Stearns v. United States, 291 U. S. 54, 60, 61, 54 S. Ct. 325, 78 L. Ed. 647; Swain v. Seamens, 9 Wall. 254, 274, 19 L. Ed. 554; U. S. v. Peck, 102 U. S. 64, 26 L. Ed. 46. It hardly would be contended that it is consistent with the principles of equity and good conscience for a taxpayer by his own conduct getting the advantage of being able to secure a double recovery of part of the cost of property acquired and sold by him.

■■ Aside from the questions of waiver and estoppel, it does not appear that the claims asserted were supported by evidence required by the applicable statute and authorized regulations thereunder. Section 214 (a) (10) Revenue Act of 1921, 42 Stat. 227, 239; arts. 165, 169, Treasury Regulation 62. With reference to depreciation of lease equipment in 1923, the evidence went no farther than to show that between October 12, 1923, and December 31, 1923, lease equipment and other depreciable assets having a stated aggregate cost were installed on the Wheelock-Smith lease, and were used in the production of oil in that year; that under date December 31, 1923, petitioner R. L. Wheelock was charged on the books of E. L. Smith Oil Company with "½ equipment Wheelock lease to Dec. 31, 1923, $83,622.11," and to exhibit a written "schedule of equipment of Wheelock-Smith

478

lease at Dec. 31, 1923," setting out each item of equipment, the cost thereof, and the total cost of all the items. There was no showing as to the dates when the several items were installed or as to the periods during which those items severally were in use. The petitioners were claiming depreciation upon the unit basis (see art. 169, Treasury Regulation 62), what they claimed being the right to deduct, as the amount of depreciation sustained within the taxable year on a given item of equipment, the proportionate part of the cost that the number of barrels of oil produced from the property after the installation of such item bears to the total number of barrels of recoverable oil underlying their interest at the date the item was installed. The dates upon which such depreciable assets were placed in use are data essential to the determination of the depreciation, if any, sustained in the taxable year. Without such data, the determination of the amount of allowable deductions cannot be made as required by the regulation. A taxpayer claiming a deduction disallowed by the Commissioner has the burden of proving, not only that the Commissioner erred, but also of establishing his right to the deduction claimed and the amount thereof. Old Mission Portland Cement Co. v. Helvering, 293 U. S. 289, 55 S. Ct. 158, 79 L. Ed. ——; Helvering v. Taylor, 293 U. S. 507, 515, 55 S. Ct. 287, 79 L. Ed. ——. To say the least, the petitioners did not carry the burden of establishing by required evidence the amounts of the deductions allowable to them for depreciation in 1923.

The petition is denied.