## Hopkins v. Hagenbuch

*Lawrence Sager*, for plaintiffs.

KURTZ, J., October 19, 1970.—In this action in equity, plaintiffs seek to compel defendants to specifically perform two written agreements for the sale of real estate located in this county. Alternatively, they seek money damages for the breach of those agreements. The chancellor refused to direct specific performance. Likewise, he refused to award money damages against either defendant. Plaintiffs and wife-defendant filed exceptions to his adjudication. Wife-defendant has now withdrawn her exceptions and has agreed to the entry of a money judgment against her. Plaintiffs' exceptions challenging the

propriety of the chancellor's determination as it pertains to husband-defendant must now be considered.

The specific question raised by these exceptions has to do with the chancellor's failure to enter a money judgment in plaintiffs' favor against husband-defendant. Such a judgment may not be entered unless that defendant is a party to this action. We do not believe that he is.

Husband-defendant was never served with process. However, plaintiffs contend that effective service upon him was accomplished because he was available for service within the jurisdiction at the time this action was commenced but actual service was not attempted upon him at that time because his then counsel had told plaintiffs' counsel that he would accept service of the writ on behalf of husband-defendant. Such acceptance was never made of record. No appearance has been entered for that defendant. He is now beyond the jurisdiction of the court and for that reason cannot be personally served.

The sequence of events upon which plaintiffs rely may be stated as follows:

Prior to the institution of this action, Henry C. Markofski, Esq., a member of the Montgomery County bar, had represented defendant, Marvin J. Hagenbuch, in connection with domestic difficulties that Hagenbuch was having with his wife, an accident case in which he was involved, and this controversy with plaintiffs concerning the agreements to sell the land here in question.

Sometime prior to July 28, 1969, Markofski told plaintiffs' counsel that he would accept service of process on behalf of husband-defendant when this suit was started.

July 28, 1969, this action was instituted by writ of summons in equity.

Eo die: Plaintiffs' counsel addressed a letter to Markofski in which he enclosed a copy of the writ of summons in equity. That letter said, inter alia: "We are herewith enclosing a summons upon the understanding, as we previously discussed, that you will accept service of the same and enter your appearance on behalf of Marvin J. Hagenbuch." That letter also made reference to the establishment of an escrow account into which payments made by plaintiffs pursuant to the terms of the agreements here in suit would be deposited "until this matter can be cleaned up once and for all." The letter also said: "Of course, distribution of the escrow account would be conditioned upon any settlement agreement between the parties or court decree."

August 18, 1969: Plaintiffs' counsel addressed a letter to Markofski enclosing plaintiffs' check to their joint orders in the amount of $386.70, that being a payment made under the terms of the instant agreements. That letter requested that Markofski endorse the check and return it to plaintiffs' counsel together with the signature card from the depository with which the escrow account was intended to be kept.

September 5, 1969: Complaint in equity filed. There is nothing on the record which indicates whether that complaint was ever served upon Markofski.

Sometime subsequent to July 28, 1969, Marvin J. Hagenbuch executed a deed in Markofski's office which purported to convey the premises in question to plaintiffs. Mrs. Hagenbuch was unwilling to join in that conveyance. Its execution was explained by Markofski as follows: ". . . , the signed deed was simply left in my hands. He (Hagenbuch) was leaving the area, and left this with me to complete, should it be an item that could be completed along those lines." The lines referred to was a settlement which would

convey title subject to the encumbrances to which it was subject.

On October 7, 1969, plaintiffs' counsel caused the matter to be ordered down for hearing at the November sessions of our equity court; shortly thereafter, he notified Markofski of his having done so. Thereupon, Markofski contacted husband-defendant and shortly thereafter notified plaintiffs' counsel that he did not represent that defendant.

The check in the amount of $386.70 was never endorsed by Markofski and was finally returned to plaintiffs' counsel on November 24, 1969.

The following are rules by which this question must be decided:

"In the absence of a controlling statute, an attorney may not, without express authority, accept or waive service of original process by which jurisdiction of the court over the person of the client is first established": 7 Am. Jur. 2d, Attorneys at Law, §117. See also, Stone v. Bank of Commerce, 174 U. S. 412, 19 S. Ct. 747 (1899); Schwarz v. Thomas, 222 F. 2d 305 (1955).

Although "an attorney has implied authority to make agreements and stipulations with respect to *purely procedural matters* during the course of litigation [citing cases] he has no such authority to enter into agreements which involve a waiver of any of his client's substantial rights or the imposition upon him of new liabilities or burdens: [citing cases]": Philadelphia v. Schofield, 375 Pa. 554, 559 (1954). (Italics supplied.)

"While the authority to conduct a transaction includes authority to do acts which are incidental to it, usually accompany it, or are reasonably necessary to its accomplishment . . . , and while an attorney, by virtue of his office, may have broader powers than the ordinary agent to bind his clients by admissions and

acts in the course of suit or in the management of the regular course of litigation . . . , such apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens upon him: . . . He cannot, without *express authority,* consent to a compromise as to boundaries in the conduct of an action of ejectment and thereby bind his client: . . . ; sell or assign a claim: . . . ; refund money paid in excess to him for his client: . . . ; or extend time of payment upon a conditional verdict: . . . Without *express authority* he cannot compromise or settle his client's claim: . . . ; release real estate from a lien . . . ; nor settle litigation: . . . The necessity of *special authority* set forth in these cases, not only denies the existence of implied authority, but also of apparent authority of an attorney to bind his client to such obligations by virtue of his office.

"*Anyone who deals with an attorney is bound to notice and to inquire into the authority he proposes to exercise.* There was no such power given the attorney in this case, nor is there any testimony in this record that would show any right or authority" to accept service of the original process by which this suit was instituted: Starling v. West Erie Avenue Building and Loan Association, 333 Pa. 124, 126, 127 (1939). (Italics supplied.)

" . . . [T]he act of an agent or attorney affecting the relations of his principal or client, with a third person, done in accordance with his principal's *manifestations of consent although without special authority,* may bind his principal or client": Sustrik v. Jones & Laughlin Steel Corporation, 189 Pa. Superior Ct. 47, 50 (1959). (Italics supplied.)

In this case, plaintiffs have not shown that Markofski had any express authority to accept service of the

writ and enter his appearance for husband-defendant. Nothing that transpired between Markofski and his client has been shown on this record. Indeed, it does not even appear that the principal was aware of the impending suit. The only evidence of any communication between attorney and client concerning the suit itself occurred sometime after the action had been instituted.

Neither can we find an implied or apparent authority in Markofski from the evidence before us. The only possible "manifestations of consent" to which plaintiffs might point in justification of a finding of implied authority are the negotiations between counsel prior to the institution of suit. The execution of the deed by the principal after suit was started cannot be interpreted as conferring any authority upon the agent prior to the happening of that event. The inferences which may properly be drawn from these circumstances fail to establish the necessary authority to accept service of process. They are equally consistent with an intention on the part of the principal that his agent should merely continue with the negotiations. We point out again that there is no showing that the principal was then cognizant of the existence of the pending action.

Plaintiffs made no inquiry as to Markofski's authority. Apparently they, as well as he, regarded his general participation in matters involving husband-defendant as the evidence of his authority upon which they relied. Having failed to make specific inquiry as to the authority he then possessed, plaintiffs cannot now assert that they have been injured. Any injury they have suffered is the product of their failure in that regard.

For these reasons, plaintiffs' exceptions must be, and are hereby, dismissed. The decree nisi heretofore entered will be the final decree.