UNITED STATES of America,
Plaintiff–Appellant,

v.

David B. LaCROIX, Jr., Gwendolyn A.
LaCroix, and North Milwaukee State
Bank, Defendants–Appellees.

No. 98–1533.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1999.

Decided Feb. 2, 1999.

Susan M. Knepel (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellant.

Michael B. Laikin, Laikin & Laikin, Milwaukee, WI, for Defendant–Appellee North Milwaukee State Bank.

Harold B. Jackson, Jr. (argued), Milwaukee, WI, for Defendant–Appellee David B. LaCroix, Jr.

Gwendolyn A. LaCroix, Cincinnati, OH, Defendant–Appellee pro se.

Before POSNER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

David LaCroix took out a residential mortgage in 1983 but quit paying in 1991. His lender assigned the note to the Secretary of Housing and Urban Development, whose agency had guaranteed payment under the National Housing Act. In 1995, when the United States got foreclosure proceedings under way, LaCroix did not bother to file an answer. But the district court did not order prompt sale. Repeatedly the judge ordered the United States to discuss settlement with LaCroix. It is not clear what there was to discuss, for LaCroix had not offered any defense to the action and was not making even token payments, but the judge was unwilling to let the litigation proceed until 1997, when a foreclosure sale at last occurred. The United States bought the property with a bid of $115,000 and moved for

confirmation—which the judge denied. He instructed the United States to convey the property to North Milwaukee State Bank for $105,500, less taxes and charges. The Bank agreed to put up this much on LaCroix's behalf but is unwilling to match the $115,000 · bid. The United States has appealed from the order refusing to confirm the sale and directing the transfer of the property at a price under the high bid.

 Delay in getting this case resolved is unfortunate. The United States had a legal entitlement to a swift sale and confirmation, so that it could collect the debt. Judges are entitled to ask litigants to negotiate about the possibility of settlement, but cannot force them to settle, see *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 653 (7th Cir.1989) (en banc), and when a round of negotiations proves fruitless the judge should decide the case. What happened here was the equivalent of judicial permission to occupy the house rent-free for more than two years, calculated to coerce the United States to settle. When refusing in February 1997 to confirm the sale, the judge remarked: "[O]nce in a while I have to follow the law and be harsh [to debtors]. But if we don't have to do that, then I like to let the principals, in this case HUD, have an opportunity to review it. I mean that's a humane way to run a Court. So why don't we ... adjourn the matter for two weeks or whatever you need". This was *after* six years of negotiations (counting pre-suit efforts) had been fruitless, not a penny had been paid on the indebtedness that whole period, and it was well past the time to "follow the law". A judge is not a chancellor entitled to apply his own idea of humane policies toward debtors. Congress has decided how much time debtors such as LaCroix have to pay (or redeem); judges must implement rather than frustrate those rules. Congress expressed a strong preference for expedited collection under the National Housing Act, for debtors do not receive a redemption period when these loans are foreclosed. Compare 12 U.S.C. § 1701k with 28 U.S.C. § 2410(c). Rates of interest rise, loans become harder to obtain, and persons situated similarly to LaCroix are made worse off tomorrow, if it proves difficult to collect debts and enforce security interests today.

The judge in February 1997 announced a brief deferment to ponder settlement yet again. In March the United States informed the court that HUD had reconsidered and rerejected the Bank's offer to pay off the loan for $105,500. The court did not respond to this communication. In June the United States filed another motion asking the court to confirm the foreclosure sale. Again the judge did not respond or schedule a hearing. But in September 1997, without holding a hearing or receiving any further submissions from the parties, the court annulled the sale and directed the United States to take the Bank's offer (and, apparently, to forgo any deficiency judgment against LaCroix even though the debt with interest exceeds $130,000). The judge explained that LaCroix had "represented to the court that 'in discussions with HUD, HUD had informed me that if I got a licensed HUD appraisal of my property, and it was less than what I owed, and I found a third party that would pay that, that they would accept that.' This representation has not been denied by the Government.... It is apparently HUD's general practice to accept a settlement such as one which was offered by the Bank, and HUD informed Mr. LaCroix that it would do so in this case.... In light of the circumstances of this case, the court declines to confirm the January 9, 1997 sale of the Property, and orders the Government to accept the Bank's compromise offer." Another four months passed before the court entered an appealable judgment.

Whatever else may be said about this sequence of events, it is apparent that the United States did not agree to a settlement: LaCroix and the Bank made an offer, which was refused. The Bank's letter calls itself an offer of settlement; the Bank did not think that it was accepting an offer HUD had placed on the table. Moreover, the United States, the party sought to be bound, has not made a written commitment of any kind. Perhaps the federal government settles many cases like this on terms similar to those the Bank proposes, but an agency's expression of willingness to entertain a particular kind of settlement offer does not require it to accept

that offer in any given case. Like any other party to a contract, HUD was free to insist that the terms of the bargain be enforced. The judge did not cite any authority for his contrary directive, and LaCroix does not do so either.

But let us suppose nonetheless that someone at HUD purported not simply to invite a settlement offer but also finally to resolve the dispute. That deal would be ineffectual. Only the Department of Justice is authorized to settle litigation in which the United States is interested, and in this case that power was held by the United States Attorney. 28 U.S.C. § 519; 28 C.F.R. §§ 0.160, 0.168(d)(2). The position of HUD (at least of an unidentified employee of HUD) may be opaque; the position of the Department of Justice is clear. It has rejected every settlement offer and cannot be obliged to accept—for that would transfer the litigant's authority to the judge. Long ago the Supreme Court held that a purported settlement on behalf of the United States may be enforced if and only if the person who entered into the settlement had actual authority to compromise the litigation. *United States v. Beebe*, 180 U.S. 343, 351–55, 21 S.Ct. 371, 45 L.Ed. 563 (1901); see also *Stone v. Bank of Commerce*, 174 U.S. 412, 19 S.Ct. 747, 43 L.Ed. 1028 (1899); *Urso v. United States*, 72 F.3d 59 (7th Cir.1995). No one at HUD had actual authority to settle this case; and the persons in the Department of Justice who do have authority have declined to accept less than the United States' legal due. The district judge was required to respect that decision, made by those in the Executive Branch of government entitled to manage litigation.

The judgment is reversed, and the case is remanded with directions to confirm the foreclosure sale and enter an appropriate deficiency judgment.