[No. F031178. Fifth Dist. Mar. 2, 1999.]

ELBERT ERNEST DAVIDSON et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
CITY OF MENDOTA, Real Party in Interest.

**COUNSEL**

Thomas & Snell, Thomas, Snell, Jamison, Russell and Asperger and Marcus D. Magness for Petitioners.

No appearance for Respondent.

David J. Weiland for Real Party in Interest.

**OPINION**

**WISEMAN, J.**—Murphy's Law states that *if anything can go wrong, it will.* Petitioners Elbert Ernest Davidson and Edward Warkentine have had more than a taste of Murphy's Law in this case, which sports a complex and jumbled procedural history spanning over 10 years. Briefly stated, the petitioners run a junkyard establishment on their property. The City of Mendota filed a lawsuit to make them clean it up. A purported settlement was reached which was signed by petitioners' then attorney and the City of Mendota's attorney, but *not* by the petitioners. It was presented ex parte to a judge, who signed a judgment confirming the settlement.

Later, when there were compliance problems followed by contempt allegations, petitioners claimed, among other things, that their attorney (who coincidentally by this time was now the city attorney for the City of Mendota) never had authority to bind them to the settlement agreement. They also complained their attorney had fraudulently concealed a conflict of interest which they had not waived.

Matters looked like they might come to a head on April 7, 1992, which was the date set for the contempt action and a motion to rescind the judgment. Unfortunately, the trial court was short of time and the contempt action and motion to rescind ended up being separated for hearing without any resolution of the authority issue. To make a long story short, the trial court later denied the petitioners' rescission motion; this ruling went up on appeal, and that is when petitioners' legal troubles really began.

On appeal, we affirmed the trial court's decision to deny the rescission motion, in effect finding no fraud, and the case went back to the trial court. In doing so, we noted that an authorized signature of an attorney can bind that attorney's client to a written settlement agreement.

Another contempt proceeding went forward but a finding of contempt was ultimately vacated because notice was not given to the petitioners' attorney. In an effort to get someone to decide the authority issue, the petitioners filed a "Motion for Order to Set Matter for Jury Trial." This motion was denied because of "the staleness of the claim" and because petitioners were barred from raising the claim that *Levy* v. *Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171], applied. Once again, petitioners filed an appeal to this court, which was dismissed as "an attempt to appeal a nonappealable order." There was still no resolution of the authority issue.

Time marched on. The City of Mendota again initiated contempt proceedings. This time petitioners were found in contempt and sentenced to five days in jail. The trial court cannot be faulted for this decision in light of our two prior opinions which had soundly rejected all of petitioners' affirmative defenses, and dutifully applied the law of the case doctrine. Petitioners filed a petition for writ of habeas corpus, and requested a stay. We directed an order to show cause issue, and stayed the contempt order.

Recently, our Supreme Court in *Levy* v. *Superior Court, supra,* 10 Cal.4th 578, examined Code of Civil Procedure section 664.6 (section 664.6), and held that under its summary procedures, a written settlement agreement is not enforceable unless it is signed personally by the litigant. (10 Cal.4th at p. 580.) Thus, consistent with *Levy,* we hold the *judgment* obtained by the City of Mendota behind the purported settlement agreement is void for purposes of enforcement in contempt proceedings premised on its violation. The purported settlement agreement in this case was never signed by the petitioners—only by their attorney. As a result, there was no *summary* mechanism available to the City of Mendota to enable them to obtain an enforceable judgment in the absence of compliance with section 664.6. Our conclusion is not changed by the fact there was no motion made to enforce

settlement pursuant to section 664.6. We recognize there are other more cumbersome methods to enforce the settlement—motions for summary judgment, separate suits in equity and amendments to the pleadings—but none of these procedural mechanisms were used either.

Not only is the judgment void, but it is also questionable whether there is even a valid settlement agreement. Regrettably, to this day, petitioners have never been able to obtain a factual resolution of the claim that their then attorney lacked authority to bind them to the settlement agreement. The petitioners' efforts to have an evidentiary hearing on this subject have been thwarted at every turn.

Whatever the outcome of such a hearing might have been is not before us. The bottom line: the contempt order issued against the petitioners is invalid since it is not premised on a valid judgment. The judgment of contempt is annulled, and a permanent writ of mandate shall issue to vacate the void order.

## PROCEDURAL HISTORY

In 1982 the City of Mendota (the City) filed a civil action against petitioners Elbert Ernest Davidson and Edward Warkentine. The action sought to obtain an injunction prohibiting Davidson and Warkentine from operating "a junkyard or vehicle dismantling establishment" on four parcels of property that had been zoned to permit single-family dwellings. The action purportedly settled in 1987 with a "Stipulation for Settlement and Entry of Order." This document was signed by the attorney for the City (Stephen E. Carroll) and by the then attorney for petitioners (J. Stephen Lempel), but not by the parties themselves. It was presented ex parte by the City for a judge's signature and became a judgment or order (the 1987 stipulated order). Under the terms of the 1987 stipulated order, petitioners agreed to stop their junkyard activities. According to the City, petitioners did not comply with the 1987 stipulated order.

In the meantime, in October of 1988, Lempel became the city attorney for the City of Mendota. The City initiated contempt proceedings against petitioners in late 1991. Petitioners countered by moving in 1992 to vacate the 1987 stipulated order. Initially, they argued the stipulation should be rescinded because at the time of its entry, their attorney had a conflict of interest which had not been waived by either petitioner. Additionally, they alleged this lack of disclosure constituted a form of extrinsic fraud. Petitioners supplemented these contentions with an argument that since the stipulation was not signed by the parties nor approved in open court, it was not

binding. As a separate ground, petitioners sought a hearing on whether Lempel had authority to enter into the stipulation on their behalf.

Both the contempt action and the rescission motion were set for hearing on April 7, 1992. At the hearing the City argued that this was simply a case of "buyer's remorse," i.e., petitioners had, in fact, agreed to the stipulation but later changed their minds. Petitioners' counsel, E. Robert Wright, countered, however, that the question of Lempel's authority had yet to be tried: "First, Your Honor, what's been overlooked is Mr. Davidson, in his deposition, testified [un]equivocally that Mr. Lempel never asked him for authority to sign a stipulation on his behalf, and that Mr. Davidson did not agree to it, and that it was his understanding that before there could be any settlement, he would have to sign something. . . . It's absolutely unequivocal. We attached a declaration of Mr. Warkentine in which he testified to the same effect. So we have testimony from the defendants before the Court that they simply did not agree to it; .. . . ."

The issue of authority was deferred, however, because the court did not have time to take testimony at the April 7, 1992, hearing; there was a pending motion to compel; and to avoid unnecessarily having to deal with the attorney/client privilege problems, which were very delicate because Lempel was now employed by the City and a trial on the underlying lawsuit was a future possibility.

The City agreed that the matter regarding authority should be continued to the order to show cause re contempt proceeding (OSC hearing) when the motion to compel could also be heard:

"[I]t really is the handicap I am working under with regard to Mr. Lempel's testimony, I have only been able, through one reference in his deposition transcript, to show that he was—that he believed he was authorized, he believed, to enter into the stipulation. Throughout, I have been blocked by the attorney/client privilege. I brought a motion to compel. The judge that heard that assumed this testimony would come out at the OSC re contempt.

"I have nothing to cite to you with regard to Mr. Lempel's version of how this settlement came about, because every discussion between him and his clients was blocked by Mr. Wright.

"Under the circumstances, if this Court plans on addressing the issue of authority, at the very least, I believe it should be deferred until the OSC re contempt is heard so that that testimony can be brought out. And I will

represent to the Court that I will call Mr. Lempel first. And if his testimony does not satisfy the Court, at that point, we won't have added any more time than having Mr. Lempel take the stand and be examined, assuming I can get into that point."

Counsel for petitioners noted that the motion to compel had been put "over for the judge hearing this matter." The court set April 13, 1992, for its ruling on petitioners' rescission motion, and noted the OSC hearing, *if necessary*, would be set for a later date. Lempel, who was present at the April 7 hearing, asked whether he would need to return to testify on April 13. The court stated: "Not in that proceeding. I guess in the contempt, which would be a later date. If it is determined that you are needed, I will have to—we will reset it for everything that one day."

The petitioners' problems began when their rescission motion was denied. They filed a petition for writ of mandate and requested a stay of the pending OSC hearing, and subsequently filed an appeal to this court. We consolidated the writ petition and appeal, stayed further proceedings, and subsequently affirmed the denial of the motion in an unpublished opinion filed in February 1994. (See *City of Mendota* v. *Davidson* (Feb. 28, 1994) F017841, F017770 (the first appeal).) We expressly refused to consider Lempel's authority to sign the stipulation on behalf of petitioners because "the question of whether Lempel was acting with or without the authority of the clients was not before the court." In retrospect, given the fact the OSC hearing, including the issue of Lempel's authority, was still pending for trial, the first appeal should have been dismissed as premature.

In 1995, the City once again initiated contempt proceedings for alleged noncompliance by petitioners with the 1987 stipulated order. As a result, in June of 1995, the trial court ordered Davidson and Warkentine to appear and show cause why they should not be held in contempt of the 1987 stipulated order. Davidson and Warkentine were each personally served with the "Order to Show Cause Re Contempt" and appeared without counsel at the contempt hearing. After the hearing, Judge O'Neill issued an August 28, 1995, "Order After Contempt Hearing" in which he found petitioners in contempt of the 1987 stipulated order. He sentenced them to five days in jail, but stayed imposition of the sentence until 5:00 p.m. on September 21, 1995. He further ordered that if petitioners belatedly complied with the requirements of the 1987 stipulated order by 5:00 p.m. on September 21, their jail sentences would be suspended.

On September 21, petitioners, through counsel, sought an ex parte order vacating the contempt order. The thrust of their attack was that even though

each had been personally served with the order to show cause, their attorneys of record (Thomas, Snell et al.) had not been served and were unaware of the OSC hearing. The court later determined, in March of 1996, that the City had not given notice to petitioners' counsel in June 1995 of the OSC hearing, and the appropriate remedy was to vacate the August 28 "Order After Contempt Hearing" and to begin anew. The court set the new contempt hearing for April 24, 1996.

Meanwhile, petitioners, represented by Wright, filed a "Motion for Order To Set Matter For Jury Trial" on February 26, 1996, in an attempt to try the issue of Lempel's authority to stipulate to the settlement of their case. As accurately set forth in Wright's declaration in support of the motion, trial of this issue had previously been put over due to the court's schedule on April 7, 1992. The motion was heard by Judge Kane, and on March 4, 1996, he denied petitioners' motion as follows:

"1. Defendants' Motion for Order to Set Matter for Jury Trial is hereby denied.

"2. Because of the *staleness* of the claim, Defendants are barred from raising the issue of Defendants' former attorney, Steven Lempel, having authority to enter into the December 14, 19[87] Stipulation for Settlement and Entry of Order.

"3. Likewise, because of the staleness of the claim, Defendants are barred from raising the claim that Levy v. Superior Court (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171], applies to this case." (Italics added.)

Shortly afterward, petitioners filed a notice of appeal from Judge Kane's March 4, 1996, order denying their "Motion For Order To Set Matter For Jury Trial." We dismissed the second appeal on November 3, 1997, as an attempt to appeal a nonappealable order. We gave the issue of authority short shrift, stating, "they [petitioners] requested a jury trial on the purported 'issue' of whether their 1987 counsel had had authority to enter into the 1987 stipulation with the City. We are aware of no authority which permits a party to request a trial years after a final judgment has been entered, and then appeal from an order denying the motion requesting a trial." (*City of Mendota* v. *Davidson* (Nov. 3, 1997) F025807 [nonpub. opn.] (the second appeal).) The April 24, 1996, trial date for the contempt was vacated.

### Events Postdismissal of the Second Appeal

The remittitur issued on January 5, 1998, and on April 10, 1998, the City filed another order to show cause re contempt. After a hearing, Judge Gary

D. Hoff found petitioners in contempt of the 1987 stipulated order. On June 9, 1998, they were sentenced to five days in county jail. This sentence was ordered stayed until July 24, 1998, at 5:00 p.m. If, prior to July 24, the petitioners complied with the 1987 stipulated order, as determined by the City, the sentence would be suspended. If petitioners failed to comply, the City was authorized to enter petitioners' properties, clean them up, and obtain a lien for the cleanup.

On July 7, 1998, Davidson and Warkentine filed this petition for writ of habeas corpus, and requested a stay. On July 16, 1998, we directed that an order to show cause issue regarding why petitioners were not entitled to relief, and that the contempt order be stayed.

### DISCUSSION

Petitioners correctly contend the 1987 stipulated order is void, and thus, the failure to comply cannot result in a valid contempt order. We begin by observing that this case is complicated by its convoluted procedural history and a clarification of the law made by our California Supreme Court.

### A. *The law of contempt*

The law of contempt was summarized in *People* v. *Gonzalez* (1996) 12 Cal.4th 804, 816 [50 Cal.Rptr.2d 74, 910 P.2d 1366], as follows: "Contempt of a valid order of a court may be punished in two ways. First, an order to show cause regarding an alleged act of contempt may issue in the court that made the order that was violated, commencing a separate action in the ordering court. Upon a finding of contempt, the contemner may be punished with up to five days in jail and a fine. [Citations.] Because of the potential punishment, this type of proceeding is considered quasi-criminal, and the defendant possesses some of the rights of a criminal defendant. [Citations.] The contemner possesses no right of appeal, however, and review of the contempt judgment is by extraordinary writ. [Citations.]" It is axiomatic that "[a]n order of contempt cannot stand if the underlying order is invalid." (*In re Misener* (1985) 38 Cal.3d 543, 558 [213 Cal.Rptr. 569, 698 P.2d 637]; *People* v. *Gonzalez, supra,* 12 Cal.4th at p. 816.)

A contempt judgment is not appealable (Code Civ. Proc., §§ 904.1, subd. (a)(1), 1222) and must be reviewed, if at all, by writ. (*Bermudez* v. *Municipal Court* (1992) 1 Cal.4th 855, 861, fn. 5 [4 Cal.Rptr.2d 609, 823 P.2d 1210].) Petitioners here seek a writ of habeas corpus or in the alternative a writ of certiorari. "Either remedy is properly invoked." (*In re Buckley* (1973) 10 Cal.3d 237, 240, fn. 1 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.2d 248].)

B. *Validity of the 1987 stipulated order*

 Petitioners contend the 1987 stipulated order is void under section 664.6 and *Levy* v. *Superior Court, supra,* 10 Cal.4th 578. Based on this underlying premise, petitioners argue the contempt order must be set aside or vacated.

(1) *The unraveling of the first appeal*

Petitioners first raised the applicability of section 664.6 in the "supplemental reply" of their motion to rescind the stipulated settlement and order in 1992. A hearing on the motion was held on April 7, 1992. As we noted in the first appeal:

"At the April 7 hearing, counsel for Davidson and Warkentine argued that the lack of personal signatures of Davidson and Warkentine was a sufficient basis upon which to rescind the stipulation and order. Counsel for the city called the court's attention to this court's decision in *Haldeman* v. *Boise Cascade* (1985) 176 Cal.App.3d 230 [221 Cal.Rptr. 412], in which we pointed out that an authorized signature of an attorney can bind that attorney's client to a written settlement agreement, and that such a document can constitute a written stipulation of the parties for settlement within the meaning of Code of Civil Procedure section 664.6.[2] The parties also argued the issue of the alleged conflict of interest. Six days later the court announced its decision denying the motion to rescind. The court stated:

" 'All right. The Court's ruling with regard to this motion to rescind or to set aside the stipulation, the court finds there was not any fraud in the—any intrinsic fraud. The court finds that the [Haldeman] case does apply and that the signature of the attorney binds the parties or clients. Therefore the motion is denied.' "

We affirmed the trial court's ruling, stating:

"Even if we assume that section 664.6 applies, as appellants contend, we are not of the view that the words '[i]f parties to pending litigation stipulate,

---

[2]In 1987 Code of Civil Procedure section 664.6 stated: 'If parties to pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.' The section presently states: 'If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally on the record before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.' "

in writing . . . for settlement' require that the 'writing' must be personally signed by the client.

"We decided this precise issue in *Haldeman* v. *Boise Cascade* (1985) 176 Cal.App.3d 230 [221 Cal.Rptr. 412], where we stated, with reference to the word 'parties' in section 664.6: 'Common sense and common practice indicate that the term "party" should include the individual litigant or his attorney of record acting on his behalf. . . . In enacting section 664.6, had the Legislature intended "parties" to have a meaning other than this commonly understood meaning, it could and would have provided so in the statute.' (*Haldeman* v. *Boise Cascade, supra,* 176 Cal.App.3d at pp. 233-234.)"

After discussing several cases that petitioners contended were in conflict with our *Haldeman* opinion (*Haldeman* v. *Boise Cascade* (1985) 176 Cal.App.3d 230 [221 Cal.Rptr. 412]), we concluded in the first appeal that to the extent they were in conflict, "we reaffirm our holding in *Haldeman* for the reasons stated therein." We also noted the issue was then before the California Supreme Court in *Levy.* According to petitioners, they filed a petition for review in the California Supreme Court but review was denied.

In *Levy,* the court disapproved our *Haldeman* holding. (*Levy* v. *Superior Court, supra,* 10 Cal.4th at p. 586, fn. 4.)

"In this case, the agreement to settle was signed only by the attorneys for the litigants, rather than the parties themselves. Because the settlement of a lawsuit is a decision to end the litigation, it obviously implicates a substantial right of the litigants themselves. Given this circumstance and section 664.6's focus on settlements, we conclude that in providing for an enforcement mechanism for settlements by 'parties,' the Legislature intended the term to literally mean the litigants personally. This conclusion is also supported by the circumstances preceding and surrounding the enactment of section 664.6.

"Section 664.6 was enacted in 1981. (Stats. 1981, ch. 904, § 2, p. 3437.) As this court noted recently in *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 904-905 . . . , prior to 1981 the Courts of Appeal had expressed conflicting views concerning the proper procedures to enforce settlement agreements in pending litigation.

"Under one line of authority, settlement agreements preceding the enactment of section 664.6 in 1981 could be enforced only by a motion for summary judgment, a separate suit in equity, or an amendment to the

pleadings. This became the dominant view. [Citations.] It was based on the theory that nonstatutory motions to enforce settlements were motions based on facts outside the pleadings and, under this court's decisions [citations], had to be treated as motions for summary judgment that could be granted only if all of the papers submitted showed there was no triable issue of fact. [Citations.]

"A second line of authority permitted motions to enforce settlements based on facts outside the pleadings if the fact of settlement and the terms of the settlement were not subject to reasonable dispute. [Citations.] The theory underlying this approach was that the statutory means of enforcing settlements by motions for summary judgment, separate suits in equity, or amendments to pleadings were inadequate, and that a court therefore must have authority to enforce settlements as a means of controlling proceedings before the court and protecting the interests of the parties. [Citation.]

"The conflict was resolved in 1981 when the Legislature enacted section 664.6, which created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met. . . ." (*Levy v. Superior Court, supra,* 10 Cal.4th at pp. 584-585, fns. omitted.)

The court went on to conclude that the term "parties" as used in section 664.6 means the litigants themselves, and does not include their attorneys of record. (*Levy v. Superior Court, supra,* 10 Cal.4th at p. 586.) The effect of *Levy* is to completely undermine the reasoning we relied upon in denying petitioners relief in the first appeal. As a result, the only remaining question is whether petitioners should receive relief now.

### (2) *The statement of decision*

The trial court concluded petitioners were not entitled to relief. As relevant to this appeal, the court made the following factual findings and legal conclusions: (1) no motion was ever filed pursuant to section 664.6 to convert the settlement into a judgment; (2) the 1987 stipulated order is valid even absent the petitioners' signatures or on record consent because the judgment was entered without the benefit of section 664.6; (3) *Levy v. Superior Court, supra,* 10 Cal.4th 578 is procedurally distinguishable and does not affect this case because here no party sought to enter the stipulation as an order under section 664.6, but instead, the order was issued without a motion directly to the court; (4) *Levy* does not apply because the authority for the 1987 stipulated order was the agreement of the parties as set forth in clause 6 of the stipulation; and (5) since the Court of Appeal had already

rejected similar attacks on the validity of the 1987 stipulated order, its validity was law of the case. ·

Specifically, with regard to application of the law of the case, the court once again rejected petitioners' claim that Lempel was not authorized to enter into the stipulated settlement. Petitioners noted in their opposition to the OSC hearing that "Lempel signed the December 16, 1987 Order without first consulting with his clients." Counsel for petitioners argued at the hearing that "We have a lawyer, without authority, signing a settlement agreement that fundamentally affects the interests of my clients." The court rejected this issue as follows: "This Court has already considered the issue of whether the December 16th, 19[8]7, order was invalid due to the fact that it was based upon a stipulation that *had not been agreed to* or signed by the defendants. That issue was raised and rejected by the Court's ruling and the order of the Court on March 4th, 1996 [by Judge Kane]. The defendants also lost that argument when their appeal of the March 4th, 1996, order was dismissed by the appellate court." (Italics added.)

### (3) *Levy is not distinguishable*

The first ground relied upon by the trial court is twofold: (1) the facts of this case and those of *Levy* are distinguishable; and (2) since section 664.6 was not used, its requirements do not come into play. Although we relied on this reasoning in the first appeal, neither of these conclusions can withstand scrutiny in light of *Levy*. The trial court can hardly be faulted, however, because in dictum in the first appeal, we stated: "Whatever the Supreme Court may decide, however, we do not think that it would make any difference in the present case. This is because, as we have explained, respondent city never utilized section 664.6 to obtain the stipulated judgment in the first place."

In the first appeal we explained: "First, we note that nothing in section 664.6 says that parties to litigation cannot stipulate to a settlement of a case and stipulate that the terms of the written settlement be entered as an order or judgment of the court. The purpose of section 664.6 *appears to be* to enable a party who has stipulated to a settlement of the case (in writing or orally before the court), but who does not have a judgment reflecting such a stipulation, to obtain such a judgment so that the terms of the settlement can be enforced in the event that the other party refuses to abide by the terms of the stipulation. When a stipulated judgment already exists, section 664.6 simply is not needed. It has long been the rule that parties to litigation can stipulate, through a written agreement signed by their attorneys, to settle the case, to include in their agreement a provision that the terms of the settlement be entered as a judgment, and to obtain such a judgment by stipulation." (Italics added.)

We then relied upon *Pacific Tel. & Tel. Co.* v. *Fink* (1956) 141 Cal.App.2d 332 [296 P.2d 843] to support this premise. As already noted, however, *Levy* disagreed with our interpretation of section 664.6. As *Levy* made clear, in 1981 the Legislature resolved the conflict among the courts concerning the proper procedures to enforce settlement agreements in pending litigation when it enacted section 664.6. As of 1981, the only "summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met . . ." is section 664.6. (*Levy* v. *Superior Court, supra,* 10 Cal.4th at p. 585.) The other, more formal and cumbersome statutory means of enforcing settlements by motions for summary judgment, separate suits in equity, and amendments to the pleadings remained available. (*Id.* at p. 586, fn. 5.) *Fink*, which was decided in 1956, obviously had no bearing on the later enacted section 664.6, as interpreted by *Levy*.

Further, *Fink* did not even involve a stipulation for settlement of the case. It clearly is not authority for the position that a stipulation to settle a matter signed by the attorneys may become a binding *judgment* on the parties simply by having it signed by a judge, absent a summary judgment motion, suit in equity, amendment of the pleadings, or compliance with section 664.6.

In *Fink,* the stipulation entered by counsel did not settle the underlying dispute. To the contrary, the matter was to be fully litigated before the Public Utilities Commission (PUC). The stipulation would not even become a judgment unless the defendants failed to obtain the relief they were seeking from the PUC. (*Pacific Tel. & Tel. Co.* v. *Fink, supra,* 141 Cal.App.2d at pp. 333-334.) This was the reason the court held the attorneys had implied authority to enter the stipulation:

"Upon the authority of *Gilmore* v. *American Central Ins. Co.*, 67 Cal. 366, 367 [7 P. 781], and *Stone* v. *Bank of Commerce*, 174 U.S. 412 [19 S.Ct. 747, 43 L.Ed. 1028], it would seem to be the rule that where two actions, each pending, involve the same disputed issue raised between the same adverse parties represented, respectively, by the same attorneys in each proceeding, the attorneys of record have apparent or implied authority to enter into a stipulation that disposition of the issue in one proceeding shall be determinative in the other. As stated by respondent, 'In the instant action, Appellants herein asserted a counterclaim for damages based upon the allegedly wrongful refusal of the Respondent to accept for advertising in the "Yellow Pages" of the Classified Telephone Directory certain listings desired by Appellants. This very issue was the subject matter of the judicial administrative proceeding instituted by the Appellants herein against the Respondent before the Public Utilities Commission of the State of California.

" 'The parties were identically aligned and were represented, respectively, by the same counsel in both proceedings.' " (*Pacific Tel. & Tel. Co.* v. *Fink, supra,* 141 Cal.App.2d at p. 339.)

Second, the issue in *Fink* was whether the stipulation entered into by counsel was authorized, not whether a proper procedure was used to enter it as a *judgment.* (*Pacific Tel. & Tel. Co.* v. *Fink, supra,* 141 Cal.App.2d at p. 335.) Obviously, ". . . an opinion is not authority for a proposition not therein considered." (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) Finally, unlike in *Fink,* here the factual question of whether Lempel had authority to settle the matter *has never been decided.*

In short, *Fink* is not authority for the proposition that a purported settlement signed only by counsel for the parties may be transformed into a binding judgment on the parties based simply on a judge's signature obtained in an ex parte, unreported proceeding.

For the same reason, the fact that in *Levy* the section 664.6 procedure was used, while it was bypassed here, makes no difference. Section 664.6 was the only *summary, expedited* procedure available when the 1987 stipulated order was entered, and there was no basis for bypassing this statutory procedure. (Accord, *Robertson* v. *Chen* (1996) 44 Cal.App.4th 1290, 1293 [52 Cal.Rptr.2d 264] [except for section 664.6, "[T]he only other *summary* procedure available [is] summary judgment"].) The trial court's reasoning that the stipulation itself provided the procedure to be used,[1] begs the question: If a stipulated settlement cannot be validly enforced absent the signatures of the litigants, a summary judgment motion, a suit in equity or an amendment to the pleadings, how can a clause within such a settlement stipulation be enforceable? The answer, we believe, is that it cannot. Without the protections provided in section 664.6, under *Levy,* a written stipulated settlement not signed by the parties cannot be made self-executing and enforceable as a judgment. To do so would, as petitioners contend, nullify section 664.6 and its protections. Consequently, the 1987 stipulated order was void and unenforceable under *Levy* because it could not be entered as a judgment absent compliance with section 664.6 or the other established statutory means for enforcing settlements. (Accord, *Robertson* v. *Chen, supra,* 44 Cal.App.4th at p. 1293.)

Our colleague contends that we have "revoked the law of agency" with respect to settlement agreements. (Dis. opn., *post,* at p. 537.) In our view,

---

[1]Clause 6 provided: "This Stipulation shall be entered in the file of the Superior Court and the Court shall be requested to enter an Order consistent with the matters set forth herein."

however, the Supreme Court in *Levy* did not take issue with the law of agency, but rather, stated sound policy reasons for the enactment of section 664.6: "Thus the statute requires the 'parties' to stipulate in writing or orally before the court that they have settled the case. The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. [Citations.] It also protects parties from impairment of their substantial rights without their knowledge and consent. (See *Blanton* v. *Womancare, Inc.* [(1985)] 38 Cal.3d [396,] 404.)" (*Levy* v. *Superior Court, supra,* 10 Cal.4th at p. 585, fn. omitted.)

### (4) *Void orders and contempt*

■ This brings us back to the underlying principle that "[a]n order of contempt cannot stand if the underlying order is invalid." (*In re Misener, supra,* 38 Cal.3d at p. 558.) As stated in *People* v. *Gonzalez, supra,* 12 Cal.4th at page 817: "The rule is well settled in California that a void order cannot be the basis for a valid contempt judgment. We established in *In re Berry* (1968) 68 Cal.2d 137, 147 . . . , a case involving a misdemeanor contempt prosecution, that 'the violation of an order in excess of the jurisdiction of the issuing court cannot produce a valid judgment of contempt [citations], and that the "jurisdiction" in question extends beyond mere subject matter or personal jurisdiction . . . .' Rather, ' "any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis*, are in excess of jurisdiction." ' (*Ibid.*)"

■ Based on *Levy,* the 1987 stipulated order was in excess of the court's jurisdiction because it was not entered in compliance with section 664.6 or some other settlement enforcement mechanism. Thus, it is void and cannot be the basis of a valid contempt order. We take no position on whether the stipulated settlement agreement is valid, binding, or legally enforceable. (See *Williams* v. *Saunders* (1997) 55 Cal.App.4th 1158, 1163-1164 [64 Cal.Rptr.2d 571]; *Robertson* v. *Chen, supra,* 44 Cal.App.4th at p. 1293.) We only hold the present judgment, i.e., the 1987 stipulated order, which was obtained in an unauthorized manner, is void for purposes of enforcement in contempt proceedings premised on its violation.[2]

---

[2]Generally speaking, California, unlike other states which apply the "collateral bar" rule, does not require persons affected by injunctive orders to challenge them directly, and in the

### (5) *Law of the case*

■ The question arises, however, whether the doctrine of law of the case bars petitioners from the remedy they seek because we have previously ruled the 1987 stipulated order was valid, even though under subsequently disapproved reasoning. In other words, petitioners have previously sought to have the 1987 stipulated order vacated on the ground now asserted—that it was invalid under section 664.6. The answer is that the intervening change in the law from *Haldeman* to *Levy* is reason to ignore the doctrine because it is simply a procedural rule. (*Riemer* v. *Hart* (1977) 73 Cal.App.3d 293, 296 [142 Cal.Rptr. 174].)

"Since at least 1930, the 'modern view' has been that the doctrine of the law of the case should not be adhered to when its application results in a manifestly unjust decision. [Citations.] ' "[W]*here the controlling rules of law have been altered or clarified in the interval between the first and second appeal and adherence to the previous decision would result in defeating a just cause, it has been held that the court will not hesitate to reconsider its prior determination.* [Citations.]" ' " (*Building Industry Assn.* v. *City of Oceanside* (1994) 27 Cal.App.4th 744, 759-760 [33 Cal.Rptr.2d 137].)

As stated in *George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1291 [265 Cal.Rptr. 162, 783 P.2d 749]:

". . . Like res judicata, the doctrine of the law of the case serves to promote finality of litigation by preventing a party from relitigating questions previously decided by a reviewing court. [Citation.]

"Nevertheless we have recognized that as a procedural rule the law of the case may operate harshly, and we have fashioned a number of exceptions to the doctrine when (1) there has been an intervening change in the law, or (2) the disputed issue was not presented or considered in the proceedings below, or (3) application of the doctrine would result in a manifest injustice. [Citation.]"

"The principal ground for ignoring the doctrine, however, is an intervening or contemporaneous change in the law . . . ." (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 507, fn. 5 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807]; *Riemer* v. *Hart, supra,* 73 Cal.App.3d at p. 296.)

---

meantime, to obey the order. As stated in *People* v. *Gonzalez, supra,* 12 Cal.4th at page 819: "California courts continue to reject the collateral bar rule adopted by other jurisdictions. Instead, they apply the rule that in the contempt proceeding, the contemner may, for the first time, collaterally challenge the validity of the order he or she is charged with violating. [Citations.]"

This is precisely the situation we have here. Although we had previously held the 1987 stipulated order to be valid, under the clarification in the law effected by *Levy*, it is clear the 1987 stipulated order is invalid. Since the validity of the contempt finding is dependent on the viability of the 1987 stipulated order, the procedural doctrine of law of the case must bow to the substantive rights of petitioners, especially given the quasi-criminal nature of the matter. (See *Salazar* v. *Eastin* (1995) 9 Cal.4th 836, 859 [39 Cal.Rptr.2d 21, 890 P.2d 43] [the court justified "a departure from the law-of-the-case doctrine [because] an intervening change in the controlling rules of law" eliminated the legal basis for the injunction]; *People* v. *Gonzalez, supra,* 12 Cal.4th at pp. 816-817 [a contempt order cannot stand if the underlying order is invalid].)

For these reasons, a writ vacating the order finding petitioners in contempt shall issue.

## DISPOSITION

The judgment of contempt and accompanying orders are annulled and a permanent writ of mandate will issue directing the superior court to vacate the void 1987 stipulated order. (*Oksner* v. *Superior Court* (1964) 229 Cal.App.2d 672, 691 [40 Cal.Rptr. 621].)

Costs are awarded petitioners against real party in interest with respect to writ of certiorari and writ of mandate. (*Oksner* v. *Superior Court, supra,* 229 Cal.App.2d at pp. 690-691.)

Vartabedian, J., concurred.

**ARDAIZ, P. J.**—I respectfully dissent.

As I shall explain, (1) the stipulated judgment in issue in this case is not invalid or void, and its violation may form the basis for a judgment of contempt against these petitioners, and (2) Mr. Elbert Ernest Davidson and Mr. Edward Warkentine have had ample opportunity to litigate the issue of whether they authorized Attorney Lempel to settle this case by stipulation in 1987, but for reasons best known to them have chosen not to do so.

First of all, I am in somewhat of a quandary with this case because I am fencing with shadows of things that never were regarding legal positions that cannot be. This case arises from a writ of habeas corpus taken from a

contempt. The contempt is the result of a judgment entered in 1987. The petitioners have argued to this court that Code of Civil Procedure section 664.6[1] applies. Utilizing that assumption regarding section 664.6, they spin their argument into a full-blown defense from which this court is importuned to take up their cause. My first response is that section *664.6 does not apply at all to this case*. I contend here, as I did in 1994 in a unanimous opinion, that section 664.6 is a procedural vehicle to enforce a stipulation in order to obtain a judgment. Section 664.6 is not a procedural vehicle to enforce a judgment already obtained. It has nothing to do with a judgment already obtained. The petitioners throw up the argument that an attorney acting without authority could stipulate to a judgment and submit the stipulation to the court, thereby resulting in a judgment being entered without the authorization of the attorney's clients. Even assuming for the moment that an attorney would be so cavalier or so foolish about the interests of his or her clients, the argument has no application to the mechanism of section 664.6. Secondly, the petitioners herein have never properly asked any court at any time to hold a hearing on the issue of whether their attorney in 1987 had authority to enter into this agreement which resulted in a judgment. The reference in the majority opinion that in 1992, regarding the "authority" of counsel, the issue was raised, begs the question. (Maj. opn., *ante*, at p. 519.) The point is that it was not argued. Petitioners' counsel has never requested a hearing on that issue. We noted that in our 1997 opinion, signed by the same judges in the majority in this very case:

"The declaration of E. Robert Wright submitted in support of appellant's 'Motion for Order to Set Matter for Jury Trial' stated that Mr. Wright had appeared at an April 1992 hearing on appellant's 1992 motion to rescind the 1987 stipulated order. The declaration asserted that '[due] to the court's schedule, the issue of whether or not [appellant's] former counsel had authority to enter into the stipulation was put over for a subsequent trial.' No court order to that effect was presented by appellants in support of their 'Motion for Order to Set matter for Jury Trial.' No trial took place in 1992. Rather, appellants appealed in 1992 from the denial of their 1992 motion to rescind the 1987 stipulated order." (*City of Mendota* v. *Davidson* (Nov. 3, 1997) F025807 [nonpub. opn.].)

Further, and most notably, in this writ application, petitioners never argue that the judgment was entered pursuant to a stipulation that was not authorized. They did not attempt to defend in the trial court on the basis that their counsel was not authorized. And under the majority opinion they apparently never will have to so show because the majority concludes that unless a

[1]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

judgment is entered with the written agreement of the parties, any judgment so obtained is void. Not voidable, void! Thus, petitioners never address the obvious question: did their attorneys have authority? The silence in the face of this question is deafening. The petitioners use a statute which does not apply to secure a conclusion they do not deserve on grounds that they lost years ago and, under the majority view, they prevail.

Having stated the foregoing to clearly illustrate the thrust of my position, I will now discuss the procedural history of this case.

### FACTS AND PROCEDURAL HISTORY

On November 1, 1982, the City of Mendota brought an action in superior court against Davidson and Warkentine. The city sought an injunction prohibiting Davidson and Warkentine from operating a junkyard or vehicle dismantling establishment on certain properties which allegedly were not zoned for such a use. The case was settled in December of 1987 when the city, Davidson, and Warkentine entered into a "Stipulation for Settlement and Entry of Order." This document was signed by the attorney for the city (Mr. Stephen E. Carroll) and by the attorney for Davidson and Warkentine (Mr. J. Stephen Lempel). Paragraph 6 of the "Stipulation for Judgment and Entry of Order" stated: "This stipulation shall be entered in the file of the Superior Court and the Court shall be requested to enter an Order consistent with the matters set forth herein." The bottom of the fourth and final page of the "Stipulation for Settlement and Entry of Order" contained a proposed order for a judge to sign. It said: "IT IS BY THE COURT ORDERED that the provisions of this Stipulation be and they hereby are deemed an Order of the Superior Court." On December 16, 1987, Judge Stephen Henry signed the above-quoted order. For ease of discussion we will refer to this December 16, 1987, order as "the stipulated order" but it has been agreed by all that it is, in effect, a judgment. In fact, this was the position of petitioners in the first appeal and has continued as their position.

In 1992 Davidson and Warkentine filed a motion to rescind the stipulation and the stipulated order. The motion was made "on the grounds that, at the time of the entry of the Stipulation, their attorney had a conflict of interest which had not been waived by either Defendant." Davidson and Warkentine contended that Attorney Lempel had been negotiating to become city attorney for the City of Mendota while simultaneously representing Davidson and Warkentine. Lempel did ultimately become city attorney for the City of Mendota in October of 1988, approximately 10 months after signing the "Stipulation for Settlement and Entry of Order" on behalf of Davidson and

Warkentine. Davidson's and Warkentine's reply to the city's opposition to the motion referred to the two defendants collectively as "Davidson" and also argued that "since Davidson did not sign the stipulation, and since the stipulation for settlement was not entered into orally before the court, it is not binding." Notably absent from Davidson's and Warkentine's motion was any argument that they had in fact never authorized Lempel to settle the case on their behalf in accordance with the provisions of the "Stipulation for Settlement and Entry of Order." If Lempel had never in fact been authorized to settle the case at all, one wonders why it would even matter whether he had a conflict of interest or not when he signed the document purportedly on behalf of Davidson and Warkentine. We note that the record suggests that Davidson and Warkentine were unwilling to waive any attorney-client privilege with regard to what they may or may not have in fact authorized Lempel to do on their behalf. In short, they chose not to litigate the issue of what they in fact did or did not authorize Attorney Lempel to do on their behalf. The superior court denied Davidson and Warkentine's motion to rescind. Davidson and Warkentine appealed that ruling. We affirmed the superior court's order denying the motion to rescind. Our February 28, 1994, opinion in that case became final in March of 1994.

## THE 1987 STIPULATED ORDER IS NOT VOID

In our 1994 opinion, we addressed the same issues which had been addressed by the superior court in denying Davidson's and Warkentine's motion to rescind the stipulation and the stipulated order. These were (1) whether the superior court erred in concluding that the December 1987 stipulated order was not the result of extrinsic fraud, and (2) whether section 664.6 rendered the December 1987 stipulated order invalid as a matter of law due to the fact that the stipulation was not signed by Davidson and Warkentine personally, but rather by their attorney. The first of these two issues no longer concerns us here. When contempt proceedings were begun against Davidson and Warkentine in June of 1998, Davidson and Warkentine asserted as a defense that the 1987 stipulated order they were accused of violating was invalid because it had not been signed by the defendants personally. "An order of contempt cannot stand if the underlying order is invalid." *(In re Misener* (1985) 38 Cal.3d 543, 558 [213 Cal.Rptr. 569, 698 P.2d 637]; in accord, *People* v. *Gonzalez* (1996) 12 Cal.4th 804, 816 [50 Cal.Rptr.2d 74, 910 P.2d 1366].) The superior court's order holding Davidson and Warkentine in contempt again rejected their contention that the December 1987 stipulated order was invalid. As I shall explain, the superior court was correct.

When Davidson and Warkentine moved in 1992 to rescind the December 1987 stipulation and stipulated order, section 664.6 stated: "If parties to

pending litigation stipulate, in writing or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." This is also the way the statute read when it was enacted in 1981 and the way it read when the stipulated order was made in December of 1987. In our 1994 opinion affirming the superior court's denial of Davidson's and Warkentine's motion to rescind the December 1987 stipulation and stipulated order, we concluded that (1) section 664.6 did not apply when a stipulated judgment already exists,[2] (2) nothing in section 664.6 prohibits parties to litigation from stipulating, in a written stipulation signed by their attorneys, that a case be settled and that the terms of the written settlement agreement be entered as an order of the court, and (3) even if section 664.6 applied to any stipulation to settle a case, section 664.6 was satisfied because the word "parties" in that statute included attorneys who are acting on behalf of their clients. In my view, the first two of these three conclusions were and still are correct. The third, as we subsequently learned when the California Supreme Court decided *Levy* v. *Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171], was not. Our 1994 conclusion that the word "parties" in section 664.6 included attorneys acting on behalf of those parties relied on in our decision nine years earlier in *Haldeman* v. *Boise Cascade* (1985) 176 Cal.App.3d 230 [221 Cal.Rptr. 412]. In *Haldeman* we concluded that the word "parties" included attorneys acting on behalf of those parties. *Levy* expressly disapproved of *Haldeman* (see *Levy* v. *Superior Court, supra,* 10 Cal.4th at p. 586, fn. 4) and held that "the term 'parties' as used in section 664.6 . . . means the litigants themselves, and does not include their attorneys of record." (10 Cal.4th at p. 586, fn. omitted.)

The majority relies on *Levy* to hold that "the 1987 stipulated order was in excess of the court's jurisdiction because it was not entered in compliance with section 664.6 or some other settlement enforcement mechanism" and "[t]hus, it is void . . . ." (Maj. opn., *ante,* at p. 529.) *Levy* does not hold that an existing judgment is void if it is not entered in compliance with section 664.6 or some other settlement enforcement mechanism. Indeed, under the majority's holding, the stipulated order would apparently be deemed void even if authorized in fact or if Mr. Davidson and Mr. Warkentine had personally signed it. This would be because it was not obtained by way of a section 664.6 motion or some other settlement enforcement mechanism.

---

[2]"First, we note that nothing in section 664.6 says that parties to litigation cannot stipulate to a settlement of a case and stipulate that the terms of the written settlement be entered as an order or judgment of the court. The purpose of section 664.6 appears to be to enable a party who has stipulated to a settlement of the case (in writing or orally before the court), but who does not have a judgment reflecting such a stipulation, to obtain such a judgment so that the terms of the settlement can be enforced in the event that the other party refuses to abide by the terms of the stipulation. When a stipulated judgment already exists, section 664.6 simply is not needed." (*City of Mendota* v. *Davidson, supra,* F017841 [nonpub. opn.].)

In *Levy*, the attorneys for each side negotiated what appeared to be a settlement of a civil action. Mr. Golant, represented by Attorney Owens, had sued Mr. Levy, who was represented by Attorney Friedman. Attorney Friedman drafted a five-page letter containing the terms of the proposed settlement. Owens then wrote on the letter " 'This document, with the few changes we discussed, is acceptable' " and also signed the letter. (10 Cal.4th at p. 580.) A formal settlement agreement was drafted, but Owens's client Golant "refused to sign the formal settlement agreement." (10 Cal.4th at p. 580.) Levy moved under section 664.6 for a judgment pursuant to the terms of the alleged settlement as set forth in the letter. The superior court denied Levy's motion. It relied on *Nicholson* v. *Barab* (1991) 233 Cal.App.3d 1671 [285 Cal.Rptr. 441], a case which disagreed with our *Haldeman* opinion and which held that the word "parties" in section 664.6 did not include the parties' attorneys. The California Supreme Court resolved the issue in *Levy* by holding that *Nicholson* was correct and *Haldeman* was not—the word "parties" in section 664.6 was not intended by the Legislature to include the parties' attorneys, but rather referred to the parties personally. But *Levy* says nothing about the validity of stipulated judgments. Nor does *Robertson* v. *Chen* (1996) 44 Cal.App.4th 1290 [52 Cal.Rptr.2d 264], or *Williams* v. *Saunders* (1997) 55 Cal.App.4th 1158 [64 Cal.Rptr.2d 571], the other two cases relied on by the majority. Both of those cases involved the erroneous granting of section 664.6 motions. No such motion was ever made or ruled upon in the present case.

Prior to the enactment of section 664.6, there was a split of authority as to whether courts could entertain a nonstatutory motion to enforce the terms of a purported settlement when one side either disagreed that there had in fact been a settlement, or just had "buyer's remorse" and refused to abide by the terms of the settlement. One view was that the party alleging that a settlement had been reached had to either (1) amend its pleadings to allege there had been a settlement, and then move for summary judgment, or (2) file a separate suit in equity to enforce the alleged settlement. One problem with the first procedure was that the opposing party could defeat the summary judgment motion if that party was willing to present a declaration denying that a settlement had been reached. This would create a triable issue of fact warranting denial of the motion. (§ 437c, subd. (c).) A problem with both of these methods was that they were procedurally cumbersome. (See *Gopal* v. *Yoshikawa* (1983) 147 Cal.App.3d 128, 132 [195 Cal.Rptr. 36].) A defendant who amended his answer to the complaint to assert settlement as a defense, and then moved for summary judgment and lost, would still have to try the case, and would have yet one more issue to try at trial. Similarly, a separate suit in equity was just that—yet another lawsuit. So, instead of one settled case, there were two pending cases. As *Levy* itself pointed out, the Legislature resolved the dispute as to whether courts had the authority to entertain

a motion to enforce an alleged settlement by giving the courts statutory authority to hear such a motion, i.e., by enacting section 664.6. (*Levy* v. *Superior Court, supra,* 10 Cal.4th 578.)

*Levy* recognized that the old methods of enforcing a settlement could still be utilized. Speaking about section 664.6, the *Levy* court stated: "We note that this statutory procedure is not the exclusive means to enforce a settlement" and "[a]lternative procedures are a motion for summary judgment, a separate suit in equity, or an amendment to the pleadings in this action." (*Levy* v. *Superior Court, supra,* 10 Cal.4th at p. 586, fn. 5.) In making this observation, *Levy* cited this court's case of *Kilpatrick* v. *Beebe* (1990) 219 Cal.App.3d 1527 [269 Cal.Rptr. 52], in which we rejected a contention that the enactment of section 664.6 was intended to supersede preexisting methods for enforcing a settlement agreement. In *Kilpatrick* we observed that "[i]f the Legislature had intended to make section 664.6 an exclusive remedy, it could have expressed that intention" but "[i]t failed to do so." (219 Cal.App.3d at p. 1530; see also Weil & Brown, Civ. Proc. Before Trial 3 (The Rutter Group 1998) ¶ 12: 958, p. 12(II)-72: "Even if not enforceable under CCP § 664.6, settlements signed by counsel alone may be enforceable in separate proceedings: e.g., by motion for summary judgment (after amending the pleadings to allege settlement defense); or in a separate suit in equity. [Citation.]")

In *Blanton* v. *Womancare, Inc.* (1985) 38 Cal.3d 396, 403 [212 Cal.Rptr. 151, 696 P.2d 645, 48 A.L.R.4th 109], the Supreme Court affirmed the proposition that ". . . the authority of the attorney to bind his client by agreement or stipulation[] is governed by the principles of agency." Thus, a client is bound by the acts of the attorney agent within the scope of the attorney's actual authority (express or implied) or his apparent or ostensible authority, or by unauthorized acts ratified by the client. (*Ibid.*) In *Blanton,* the court held that an attorney does not have " 'implied or ostensible authority to bind his client to a compromise settlement of pending litigation' " based only on the fact of his or her employment as the attorney for the client. (*Blanton, supra,* 38 Cal.3d at p. 404; *Levy,* v. *Superior Court, supra,* 10 Cal.4th at p. 583.) By effectively invalidating every settlement not arrived at in conformity with section 664.6, the majority has revoked the law of agency insofar as it heretofore pertained to the relationship of attorney and client, and, in doing so, overturned *Blanton* to the extent it affirmed the application of agency principles to such relationship. As a result of this opinion, a settlement agreement entered into by the attorney is void, even if it can be proved that the attorney had actual authority to do so or that the client subsequently ratified the attorney's unauthorized act.

"In this state it is clearly the law that the violation of an order in excess of the jurisdiction of the issuing court cannot produce a valid judgment of contempt." (*In re Berry* (1968) 68 Cal.2d 137, 147 [65 Cal.Rptr. 273, 436 P.2d 273].) "Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis*, are in excess of jurisdiction . . . ." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715]; *In re Berry, supra*, 68 Cal.2d at p. 147.) The position of the majority, as I understand it, is that a court has no jurisdiction to make an order declaring the terms of a stipulated settlement even though both parties, acting through their attorneys in a written stipulation, ask the court to do so. "Parties may stipulate to entry of judgment or to the content of the judgment." (1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 302, p. 372.) "A party to an action may allow judgment to be rendered against him without opposition by express consent or stipulation to entry of a particular judgment in a pending action, before or during trial." (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 92, p. 495.) There is a rebuttable presumption that an attorney has authority to settle a case on behalf of his or her client. (*Ford* v. *State of California* (1981) 116 Cal.App.3d 507, 517 [172 Cal.Rptr. 162], disapproved on another ground in *Duran* v. *Duran* (1983) 150 Cal.App.3d 176 [197 Cal.Rptr. 497]; see also *Gagnon Co., Inc.* v. *Nevada Desert Inn* (1955) 45 Cal.2d 448, 459-461 [289 P.2d 466].) In short, the court has jurisdiction to enter a stipulated judgment, and such a judgment is not void.

Our 1997 opinion dismissing the appeal of petitioners herein, likewise never concluded petitioners could not defend on the basis of lack of authorization. Rather, it specifically addressed an appeal from denial of a "Motion for Order To Set Matter for Jury Trial" regarding the judgment which was an effort to obtain a jury trial on a final judgment. We stated then: "We wish to emphasize that the record contains *no motion* by any party seeking any ruling as to what defense or defenses the appellants could assert in any contempt trial. Judge Kane's March 4 order denying appellants' 'Motion for Order to Set Matter for Jury Trial' simply denied appellants' motion for a jury trial in the already-concluded civil action and stated his reasons for denying that motion. As Judge Kane stated at the hearing, 'That's what I understand is the only motion before me.' We wish to further emphasize that we express no opinion here as to what defense or defenses appellants may or may not assert in any contempt trial." (*City of Mendota* v. *Davidson, supra*, F025807.) Thus we made the issue unmistakably clear that the proper focus regarding authorization was as a defense to a contempt action. This is that contempt action. Where is the defense?

## Petitioners Have Chosen Not to Litigate the Authority Issue

The majority's assertion that Mr. Davidson and Mr. Warkentine have made "efforts to have an evidentiary hearing" on the issue of whether they authorized Attorney Lempel to settle the case in 1987, and that these efforts "have been thwarted at every turn" is simply not supported by the record. (Maj. opn., *ante*, at p. 518.) Mr. Davidson and Mr. Warkentine have avoided litigating this issue, all the while attempting to avoid compliance with the stipulated order by litigating other issues. This case is before us on petition for writ of habeas corpus after the superior court found Mr. Davidson and Mr. Warkentine in contempt of court for violating the 1987 stipulated order. At their contempt hearing, neither Mr. Davidson nor Mr. Warkentine testified or presented any other evidence that they had not authorized Attorney Lempel to enter into the 1987 stipulation. Their defense was that the stipulated order was invalid and void because they had not personally signed it. Similarly, when they moved to vacate the stipulated order in 1992, they contended that the stipulated order should be set aside because Attorney Lempel had a conflict of interest that had compromised his representation of them. This issue was litigated, and Mr. Davidson and Mr. Warkentine lost. They appealed that ruling to this court, and lost again. On that appeal they successfully argued that the 1987 stipulated order had all the attributes of a final judgment. They also argued, and we agreed, whether rightly or wrongly, that the denial of their motion to vacate was an appealable post-judgment order. But they failed to demonstrate any error in the superior court's denial of the motion to vacate the stipulated order. When they later filed a "Motion for Order to Set Matter for Jury Trial," they were requesting a trial in a case that they already admitted had ended in 1987 with the stipulated order. Not surprisingly, that motion was denied. Then later this contempt hearing took place, and Mr. Davidson and Mr. Warkentine still avoided the authority issue that they have had many years and ample opportunity to raise.

I say again, section 664.6 does not apply in this case. While I would agree that when a judgment has been entered without authority that may be a defense to a contempt for failure to abide by the judgment, that is not the case here and it never has been. The majority's expressions of concern about lawyers acting without authority if section 664.6 is not made to apply to a judgment might strike more of a sympathetic chord with me if petitioners ever produced evidence there was no authority. Petitioners would place the burden of proof as to authority upon the respondent herein and the majority would place that burden upon the respondent. If they have the defense of lack of authorization then the burden is on petitioners to show there was no

authority. Clearly they have never been denied that opportunity and they should hang their heads when they claim here to be aggrieved.

I would affirm the judgment of contempt.

A petition for a rehearing was denied March 23, 1999, and the petition of real party in interest for review by the Supreme Court was denied May 19, 1999. Werdegar, J., was of the opinion that the petition should be granted.